# WHEELING.

## BOGGS *v.* BODKIN.

*(BRANNON, JUDGE, absent.)

Submitted January 17, 1889.—Decided June 27, 1889.

1. SPECIFIC PERFORMANCE—PAROL CONTRACT—APPEAL.

   A written contract is entered into for the exchange of lands' and it is so far executed, that each party puts the other in possession of the lands exchanged, but deeds are not executed to complete the exchange. The parties then entered into an executory parol contract, whereby they annul the first contract of exchange, and it is put into effect partially by one of the parties restoring to the other the possession of his land. The court will enforce such contract of rescission thus partially executed.

2. SPECIFIC PERFORMANCE—PAROL CONTRACT.

   A court of equity will not enforce a parol contract for the sale

---

*Rendered judgment below.

or exchange of land, unless the terms of the contract are admitted or clearly proven.

3. SPECIFIC PERFORMANCE—PAROL CONTRACT.

Such parol contract will not be specifically enforced, unless it be proven, that the parties have good titles to their respective lands ; and, if the validity of the plaintiff's title is dependent on the question, whether he has had ten years' adversary possession of the land, he must, before he can enforce such contract, specifically establish by clear evidence, that he has had such adversary possession for ten years ; and if he has declined to defend an action of ejectment brought by a stranger to test his title, this will be regarded as showing, that his title is so doubtful, that the court ought not to require it to be received as a good title by the other party and, the plaintiff being unable to make the other party a good title, the contract ought to be rescinded.

4. APPEAL—EVIDENCE.

Orders made pending a cause suppressing portions of the evidence offered, allowing the re-taking of depositions, and other orders regulating the preparation of the cause for a hearing in the court below, in order to be good grounds for an appeal must appear not only to be erroneous, but the appellant must show by his record that he was prejudiced by the entries of such orders.

Statement of the case by GREEN, JUDGE.

On September 8, 1824, Daniel Stringer obtained a patent from the commonwealth of Virginia for 2,000 acres of land at the forks of the Little Kanawha river in what was then Lewis county. On September 25, 1828, he conveyed this and other land to Gideon D. Camden and James W. Porter, trustees, to secure the payment of several debts due to one Daniel Mason of Culpeper county, Va. By this deed of trust upon default in the prompt payment of any said debts either of said trustees was authorized to sell said land or so much thereof, as might be necessary, for cash before the front door of Thomas Bland's tavern in Weston in said county of Lewis and to pay the proceeds on said debts secured by said deed of trust. In accordance with the terms Gideon D. Camden, one of said trustees, did on December 1, 1834, at the request of Daniel Mason sell at public auction for cash after having advertised the time and place of sale, as required by said deed of trust, said tract of 2,000 acres to said Mason for $300.00 ; and by his direction said trustee on November 9, 1869, conveyed said tract of land to Samuel Merchant of the

city of Baltimore by a deed duly recorded in the clerk's office of the county of Lewis on December 9, 1839. Merchant appointed said Camden his agent and his attorney in fact to control, lease or otherwise dispose of said land; and on April 13, 1843, said Camden as such attorney in fact did in the name of his principal lease said tract to Andrew Boggs, Sr., for three years from and after April 1, 1843, the said Boggs by said lease, which he also executed, agreeing to pay to said Merchant the annual rent of 100 bushels of Indian corn to be delivered on the land and also to pay the taxes on said land, and at the end of said term, April 1, 1846, to deliver peaceable possession of said land to the said Merchant or his agent. Said Boggs under this lease took possession of and occupied the said land at once.

It further appears, that one David Alkire in 1834 took possession of a portion of this 2,000 acre tract and on July 2d 1854, entered 786 acres, a part thereof, by metes and bounds as vacant land. He surveyed this tract of 786 acres October 11, 1885, and on July 1, 1856, obtained a patent for it. This patent, it is claimed by George Bodkin and other appellants, never conferred any title to this 786 acres on David Alkire, because it appears, that, when said entry, survey and patent were made in favor of David Alkire, he was then in possession of said land as tenant under said Merchant, the owner of the Stringer patent. He had taken possession of some land, within what was afterwards made the metes and bounds of this 786 acres, about the year 1834. This land was about the year 1837 taken possession of by Andrew Boggs, Sr., under a purchase from McComas and Keneen; but he soon found, that the McComas and Keneen tract did not include this land, and thereupon he abandoned his possession under them and leased, as before stated, this 2,000 acres under the Stringer patent of Samuel Merchant, its then owner, for three years from April 1, 1843. After the expiration of this lease David Alkire took possession of this land. He occupied it for several years, but whether as a mere squatter or under any claim of title, does not appear. Afterwards one John Cunningham lived on this land a short time, but the record fails to show, whether he had any claim of title to it or not. He abandoned the possession of the land; and William B.

Alkire and John V. Alkire each afterward lived on it for short periods of time, whether under any claim of title or what claim of title, if any, does not appear; but from 1859 to 1865 Andrew Boggs, Jr., who took possession of the land under a lease from Merchant, occupied it.

On July 22, 1854, David Alkire entered this 786 acres as vacant land. He had it surveyed on October 11, 1855, and on July 1, 1856, he obtained a patent therefor from the commonwealth of Virginia. On December 5, 1859, he conveyed it to Andrew Boggs, Jr., but not being satisfied with such a title Andrew Boggs, Jr., did not have this deed recorded and in the fall of 1860 leased the 2,000 acre tract under the Stringer patent, which covered this 786 acres of land, for two years.

On September 6, 1865, Andrew Boggs, Jr., conveyed this 786 acre tract of land to George Bodkin and Nimrod G. Mundy in exchange for a tract of 725 acres, which they by a written contract had agreed to convey to him, and George Botkin was put in possession of said 786 acres of land. Shortly thereafter a demand was made of the defendant George Bodkin by G. D. Camden, as agent and attorney in fact of said Samuel Merchant, to quit the possession of said land or become the tenant of said Merchant, or else a suit would be instituted to obtain the possession of the land. Bodkin refused to surrender possession, and thereupon said Merchant, who was a non-resident of this state, instituted in the United States District Court at Clarksburg an action of ejectment to recover the land. On March 26, 1869, a notice of the filing of this declaration was served on George Bodkin, the defendant in possession of said land. Said Bodkin and his co-defendant, Nimrod G. Mundy, about one year afterwards in the spring of 1878 met said Andrew Boggs, Jr., on the land in controversy; and said Andrew Boggs deliberately waived and relinquished all his previous claims of right and title to the land in favor of Samuel Merchant and admitted, that his title to said tract of land was good. He refused to make any contest in the ejectment suit and advised the defendant in the suit to make the best compromise he could with said Merchant; and at the same time Andrew Boggs, Jr., then and there agreed, that the contract,

by which he had agreed to exchange this 786 acres of land for the 725 acres owned by said Bodkin and Mundy, should be mutually abandoned, the said Andrew Boggs, Jr., to be refunded the costs, which he had incurred in moving on to this 725 acre tract, or which he might incur in moving from off it. He did move from off the tract, and said Bodkin gave him a horse valued at $105.00 as the estimated cost he had incurred in such removal; and the defence of this ejectment suit was abandoned, and the controversy settled by the purchase of this land of said Merchant, who on October 20, 1870, conveyed it to said Mundy.

In the deed from Andrew Boggs, Jr., to said Bodkin and Mundy for the 786 acres of land Andrew Boggs reserved a lien upon the land conveyed to indemnify him against any liens, liabilities or defects of title, that might exist against the tract, which was to be conveyed by said Botkin and Mundy to said Boggs in exchange for the 786 acre tract. In the spring of 1876 William H. Boggs by a parol contract purchased from Andrew Boggs, Jr., who was his father, this vendor's lien giving him therefor an undivided moiety of 145 acres, of which he put his father in possession at the time of said contract.

In February, 1881, William H. Boggs brought his suit in chancery in the Circuit Court of Braxton county against said George Bodkin and N. G. Mundy, the administrator of Andrew Boggs, Jr., and his widow and heirs to compel said Bodkin and Mundy to elect promptly to have said contract of exchange of lands between them and his father rescinded or specifically performed on their part. In his bill and three amended bills he set out substantially the facts above stated. The original bill omits any statement of the compromise or attempted compromise made in the spring of 1870, whereby it was agreed to rescind the contract for the exchange of land by Andrew Boggs, Jr., and Botkin and Mundy.

The bill gives the contents of this contract and refers to a copy of it as filed therewith as an exhibit, though in fact no such copy was filed.

The bill alleges, that Botkin and Mundy in this exchange of lands were to pay Andrew Boggs, Jr., $—— boot, and that this sum has not been paid.

This bill further alleges, that on September 6, 1865, the said Andrew Boggs, Jr., made a deed to the defendants, said Bodkin and Mundy, for this tract of 786 acres of land, worth $6,288.00 and put George Bodkin in possession thereof, who has held it ever since under said deed, and that the said Bodkin and Mundy have disposed of a large amount of timber cut from the said land and have taken the rents and profits thereof. The bill further states, that Bodkin and Mundy have not conveyed to the said Boggs, Jr., the 725 acres of land in Upshur and Webster counties according to their contract. It further alleges, that said Andrew Boggs, Jr., in said deed to Bodkin and Mundy retained a lien on the 786 acres of land to indemnify him against any liens, liabilities or defects of title on the said 725 acre tract, which by the terms of said contract was to be conveyed by Bodkin and Mundy to the said Andrew Boggs, Jr. The bill also alleges, that on September 28, 1878, for a valuable consideration said Andrew Boggs, Jr., father of the plaintiff, transferred to him all his right, title and interest in this said 725 acre tract and in the said purchase-money amounting to $———, still unpaid, also the said lien, which he retained in the deed of the 786 acres. The bill states, that Andrew Boggs has since died intestate, and that one P. F. Duffy has qualified as his administrator. The prayer of the bill is as follows:

"Therefore plaintiff prays that the parties mentioned in the caption may be made parties defendants, and full, true, and perfect answer make to all and singular the matter herein stated and charged, and that the defendants, George Bodkin and N. G. Mundy, may be compelled to elect, within a short day given for the purpose, either to have said contract rescinded, and the deed for the 786 acres decreed void, or specifically performed on their part by the payment of $———, the unpaid purchase-money, and the conveyance to the plaintiff of the 725 acres of land ; and such other and general relief as the court may see fit to grant."

Bodkin and Mundy appeared and demurred to this bill but withdrew their demurrer at the August term, 1881, and took a rule against the plaintiff requiring him to produce and file the orignal contract between Andrew Boggs, Jr., and Bodkin and Mundy. On the 4th of October, 1881, the plain-

tiff, William H. Boggs, filed his answer in writing to this rule, in which he alleges his inability to produce this contract, because it had been left by his father, Andrew Boggs, Jr., in his lifetime with one Jonathan Bennett with instructions to bring a suit upon it and he asked the judge in vacation to award a *subpœna duces tecum* to compel the production of said paper by said Bennett. The *subpœna* was awarded by the judge, and on motion of Bodkin and Mundy the rule against the plaintiff was discharged by an order made on November 29, 1881; and a rule issued against Jonathan M. Bennett to appear and show cause, why he should not be fined for his contempt in failing to file this contract alleged to be in his possession; and in April, 1882, on motion of Bodkin and Mundy the plaintiff was required to speed his cause on pain of the dismissal of the bill; and in August, 1882, the court in vacation enlarged the rule against J. M. Bennett till the next term of court, when Bennett filed his answer in writing to this rule, but no entry of filing, it appears, was made by the court. At December term, 1882, said Bodkin and Mundy filed their joint answer to the bill, to which the plaintiff replied generally and asked leave of the court to amend his bill, alleging that the said contract between Andrew Boggs, Jr., and Bodkin and Mundy was in the possession of Jonathan Bennett, who, although called upon to produce it, had heretofore failed and refused to do so. This amended bill alleged, that Bennett had an interest in this contract, and prayed, that he might be made a party defendant in the cause and be required and compelled to produce and file this contract.

On April 28, 1883, Jonathan M. Bennett filed his separate answer to this amended bill, but this answer has been taken out of the papers of the court and can not now be found. At the December term of 1883, said Bodkin and Mundy filed their amended and supplemental joint answer, in which they set out as defence the facts hereinbefore stated. They denied the waste charged by the plaintiff. They relied upon the statute of limitations. This answer was replied to generally, and the defendants subsequently demurred to the plaintiff's amended bill.

The plaintiff filed a second amended bill, in which he

states that Homer A. Holt claimed to be the owner of the 725 acres of land, which said Botkin and Mundy contracted, as before stated, to convey to Andrew Boggs, Jr., in exchange for this 786 acres of land, and filed as exhibits deeds, which purport to convey to Holt this land, but it is alleged, that Holt agreed to let said Botkin and Mundy have this 725 acres of land, and they moved upon it and took actual possession thereof and made valuable improvements thereon and were so in possession thereof, when they made the contract on September 6, 1865, to exchange it with Andrew Boggs, Jr., for the 786 acre tract aforesaid. In this second amended bill it is alleged, that this contract of exchange has been lost and can not be found after diligent search. The bill states, that Homer A. Holt on July 24, 1882, sold and conveyed this 786 acre tract to B. C. Conrad. The bill further states, that said Bodkin and Mundy sold most of the timber from off the 786 acres to Burns & Bro. and with the proceeds purchased the said land of the agent of said Merchant, who had only a pretence of title ; and that Mundy has since sold this land to the son of said Bodkin, who is his brother-in-law. This deed, it is claimed, is fraudulent, as it was made for the purpose of defrauding the plaintiff ; and the grantee, John P. Bodkin, it is alleged, knew all the facts. He lived with his father, George Bodkin, on this land. This amended bill asks to set aside the deed from Andrew Boggs, Jr., to said Bodkin and Mundy and also the deed from Mundy to John P. Bodkin, and restore to the plaintiff the possession of this 786 acres, and for general relief.

This second amended bill was demurred to by John Bodkin and Mundy and also answered by them jointly, and in their answer they adopt the separate answer of George Bodkin previously filed. This answer states at some length the facts hereinbefore stated and especially the rescission of the contract of exchange, which it is insisted was consummated in 1870, as hereinbefore stated. He does not even assert, that the defendants, George Bodkin and N. G. Mundy, had a valid title to the 725 acre tract in Braxton county, which was to have been conveyed to the said Andrew Boggs, Jr. All that he says on the subject is : "As to what title they had to the tract of 725 acres, which Homer A. Holt agreed to

convey to them, is a matter of no consequence in this suit, because this agreement by the plaintiff rescinded the contract sued upon in this cause."

A third amended bill similar to this second amended bill but more argumentative and more detailed in its statements was filed. The defendants, said George Bodkin and Mundy, demurred to this third amended bill and also answered it substantially as they had answered the second amended bill. These answers were replied to generally.

It was proven, that this 725 acres, known as the "Bodkin Place," was sold by Homer A. Holt to said George Bodkin and N. G. Mundy about 1855, that he gave them a title-bond therefor and put them in actual possession and took their bonds for the purchase-money; that in 1870, shortly after Andrew Boggs, Jr., and said Bodkin and Mundy had agreed to cancel their contract, whereby these 725 acres were to be exchanged for 786 acres at the forks of the Kanawha, said Bodkin and Mundy agreed with Holt to cancel the contract whereby they were to purchase from him this 725 acres, and it was accordingly cancelled, the title-bond being surrendered to Holt by them, and their purchase-money-bond surrendered by Holt to them; that they gave up the possession of the land to Holt, and he agreed to pay them from $30.00 to $150.00 for improvements, which they had put upon the land, and executed his bond to them therefor; that Holt afterwards sold the land to B. C. Conrad; which contract has also been rescinded by mutual consent.

There were numerous orders made suppressing depositions or portions of depositions, giving leave to re-take depositions, and other orders relating to details in the conducting of the cause in the Circuit Court. These, so far as it is deemed necessary, will be noticed in the opinion. It is not deemed necessary to notice them further now.

On May 3, 1887, the following decree was entered. "Upon consideration whereof it is adjudged, ordered and decreed that the demurrers aforesaid be severally overruled; and the court being of opinion that the plaintiff is entitled to a rescission of the contract of exchange of lands made by Andrew Boggs with George Bodkin and N. G. Mundy, whereby the said Andrew Boggs exchanged 786 acres of land in the

bill mentioned for 725 acres of land in the bill mentioned, and to a cancellation of the deed made by the said Andrew Boggs to the defendants George Bodkin and Nimrod G. Mundy, dated the 6th day of September, 1865, a copy of which is filed as 'Exhibit B' with the plaintiff's bill, it is therefore adjudged, ordered and decreed that the contract of exchange and deed aforesaid be, and are hereby, rescinded, cancelled, and annulled, and that the defendants George Bodkin and John P. Bodkin do surrender to the plaintiff the possession of the 786 acres of land, described in the said deed, and a writ of possession is awarded the plaintiff to cause him to have the possession thereof. It is further adjudged, ordered, and decreed that N. G. Mundy, George Bodkin, and John P. Bodkin do pay to the plaintiff his costs by him herein expended; but it is provided that this decree shall not prejudice the right of the said defendants Bodkin to assert or maintain their right and title, if any they have, to the 786 acres of land aforesaid, derived by them, or either of them, from or under Samuel Merchant, in any suit or proceeding in which it may be involved. At the instance of the defendants George Bodkin and John P. Bodkin it is ordered, that the execution of this decree be suspended for the period of eighty days upon the said defendants or either of them giving bond before the clerk of this court with good security to be approved by him in the penalty of $400.00 conditioned for the payment of all such damages as any person may sustain by reason of such suspension in case a *supersedeas* to this decree shall not be allowed, and be effectual, within the time aforesaid."

To which decree an appeal and *supersedeas* were awarded to George Bodkin and N. G. Mundy, on July 11, 1887.

*J. J. Davis* and *Dayton & Dayton* for appellants.

*C. P. Dorr* and *G. J. Arnold* for appellee.

GREEN, JUDGE:

The prayer of the original bill in this cause was "that the defendants George Bodkin and N. G. Mundy may be compelled to elect within a short day given for the purpose

either to have said contract rescinded, and the deed for the 786 acres decreed void, or specifically performed on their part by the payment of $————, the unpaid purchase-money, and the conveyance to the plaintiff of the 725 acres of land; and for general relief." The evidence shows, that eleven years before this in 1876 the plaintiff finding, that he could not make good his warranty of title for the 786 acres of land contained in his deed to said Bodkin and Mundy, and that they having been sued by one Merchant for the tract of land, which they had been put in possession of, would lose the same, proposed to rescind this contract of exchange for the 786 acre tract for said tract of 725 acres, and that the proposition was accepted by the defendants the said Bodkin and Mundy, and completely consummated by them, they on the plaintiff's advice abandoning all defence of the ejectment-suit brought to recover this 786 acres of land of them, and Andrew Boggs, Jr., the father of the plaintiff, abandoning his possession of the 725 acre tract. So that in point of fact the parties to this contract had so far back as 1870 mutually agreed, that what was aked by the plaintiff's original bill was right and proper. This being the case, it is difficult to see how the court could do otherwise than rescind the contract for the exchange of these two tracts of land.

It was agreed in 1870, that this should be done, because the father of the plaintiff, Andrew Boggs, Jr., did not, as he then admitted, have a good title to the 786 acre tract. But, if proper then, it was much more proper and necessary in 1881, when this suit was instituted, as it was proven in the case, that the defendants, Bodkin and Mundy, did not then have a pretence of title to the 725 acre tract. They never did have any title; but they did have, when this contract of exchange was made, a right to demand a conveyance of this land upon their paying the purchase-money to Holt, of whom they bought it. But this right to demand a conveyance of this land was lost by them in 1870, they having rescinded their contract for the purchase of this land, given up the possession of it to Holt, and annulled the contract of sale, and Holt, the vendor, having surrendered to them their purchase-money-bonds and paid them for their improvements on the land. It would therefore obviously have been im-

proper for the Circuit Court in this cause to specifically enforce this contract, as neither party had title to the tract of land, which they undertook to exchange. It was of course proper, if the contract was to be rescinded, to restore each party to the situation he was in, when the contract was entered into. The defendants, said Bodkin and Mundy, were thus restored to the situation, in which they were, when the parties had themselves agreed on a rescission of the contract in 1870 ; that is to say, Andrew Boggs had surrendered to them the possession of the 725 acre tract, which they had put in his possession. To restore the other side to the position, in which they were, before this contract was made, it was necessary not only to require Bodkin and Mundy to surrender to the plaintiff, as the representative of Andrew Boggs, Jr., the 786 acre tract, the possession of which was obtained from said Boggs, but it was also necessary to set aside and annul the deed from said Andrew Boggs to them, dated September 6, 1865 ; and this was properly done by the decree appealed from, rendered May 3, 1887.

The counsel for the appellants insist, that this agreement made 1870 by said Andrew Boggs, Jr., and said Bodkin and Mundy to cancel this contract for the exchange of lands being but an executory parol agreement was a mere nullity, as the agreement to exchange these lands being in writing could only be set aside by an agreement in writing signed by the grantees. But the agreement in 1870 was not simply an executory agreement in writing signed by the grantees, it was executed by said Andrew Boggs, Jr., by his surrender to Bodkin and Mundy of the possession of their 725 acres of land, and they disposed of it by restoring it to Holt, from whom they had agreed to purchase it, taking back their purchase-money-bonds and cancelling and surrending the contract, whereby they became the purchasers of this land from Holt. After this, said Bodkin and Mundy could not equitably refuse to surrender to said Andrew Boggs, Jr., his 786 acres got from him in exchange for this 725 acres, and to cancel the contract for the exchange of these lands, even were the position of the appellants' counsel —that a mere executory parol contract would be insufficient to cancel a written contract for the exchange of land—tenable.

But the Court would have to set aside this contract of exchange, even though the partnership had not made a valid agreement to do so in 1870; for the parties to this contract for the exchange of lands and their representatives are unable to specifically execute the same. Said Andrew Boggs, Jr., and representatives have not and never did have such good title to the 786 acres of land, that a court of equity would be justified in holding, that their deed to said Bodkin and Mundy conveyed to them such title to his 786 acres of land, as would compel them to receive in compliance with his obligation to give this tract of land and a clear and valid title thereto. The appellants admit, that on the face of the deeds the title of said Andrew Boggs, Jr., was not good. He traced his title back to a patent July 1, 1856, by the State. But it appears in proof, that one Daniel Stringer had a patent issued to him by the State on September 8, 1824, for a 2,000 acre tract, which covered the whole of this 786 acres as entered, surveyed and patented to David Alkire more than thirty years afterwards.

It is claimed however, that David Alkire and those claiming under him acquired a valid title to this 786 acres of land by the fact, that they held in adversary possession against Daniel Stringer and those claiming under him for more than ten years prior to September 6, 1865, when this tract of land was conveyed by said Andrew Boggs and wife to said George Bodkin and Nimrod G. Mundy in accordance with said contract for the exchange of this land for the 725 acre tract. To constitute adversary possession, such as will bar the legal owner, five elements must exits. It must be (1) hostile ; (2) actual; (3) visible, notorious and exclusive ; (4) continuous; (5) under claim of title. See *Core* v. *Faupel,* 24 W. Va. 238, point 1 of syllabus.

The appellants' counsel insist, that neither David Alkire nor any one claiming under him ever held adverse or hostile possession of the 786 acres of land as against Daniel Stringer or those claiming under him. Stringer obtained a patent for 2,000 acres of land covering that located and surveyed by David Alkire some thirty years afterwards. It is true, that as early as 1834 David Alkire settled on this land and actually built a house thereon and cleared up and inclosed a

few acres of ground. The simple proving, that a party was in actual possession of a tract of land, is not sufficient; for the burden of proving, that the possession was adverse and hostile and not under the legal owner of the land, is on the person, who asserts, that such possession was adverse. See *Jones* v. *Porter*, 2 Pen. & W. 132. There is proof, that David Alkire took possession, as before stated, by enclosing a few acres of land in 1834. There was then, so far as the record shows, no claimant of this 786 acres of land or any part of it except Daniel Stringer, who had had a patent for a tract of land covering it for some ten years.

The appellants insist, that the presumption of fact is, that David Alkire entered on this land under the title of Daniel Stringer, and that this presumption is much strengthened by the fact, that the record shows no other claim of title to this land till July 22, 1854, when he entered this 786 acres of land as vacant land. In the meantime he had abandoned or surrendered the possession of this land for many years; for in 1843 Samuel Merchant, who claimed the land under the patent of Daniel Stringer, leased this land to Andrew Boggs, Sr., for three years from April 1, 1843, and put said lessee in the possession of said land, it being then unoccupied by any one. Before this lease expired Andrew Boggs, Jr., the plaintiff's father, the son of the lessee Andrew Boggs, Sr., married, and thereupon he moved into said house on this 786 acre tract, and he occupied it for some three years under his father, who was holding it under the Stringer title as tenant, when he gave it up. The agent of Samuel Merchant leased the lower part of this survey to Thomas Roby, who with his son as tenant under those claiming under the Stringer survey occupied a portion of this 2,000 acre tract by living upon it and cultivating a portion of it from 1854 till 1863.

It is insisted by the counsel for the appellee, that the possession of David Alkire and those claiming under him was not exclusive during these nine years, and also that it was not continuous, as the law requires. David Alkire obtained his patent for this 786 acres of land in July 1, 1856. He had it entered on July 22, 1854, and made a deed of it to said Andrew Boggs, Jr., on December 5, 1854, which was

not recorded till December 10, 1866. Yet in 1860 said Andrew Boggs took a lease of the whole 2,000 acre tract including this 786 acres, which had been patented to David Alkire from Samuel Merchant, claiming under the Stringer title; and if he had any adverse possession under the Alkire title, which commenced in 1854, this hostile possession was broken up by his claim as lessee under the Stringer title in 1860 and afterwards.

There is certainly much force in these views of counsel of George Bodkin and N. G. Mundy. They at least show, that the title of Andrew Boggs, Jr., to this 786 acres of land was very far from being clearly good ; and when it is remembered, that in 1870 Andrew Boggs, Jr., had an opportunity of establishing his title to this land, if he had good title, in the action of ejectment brought against his vendees, said Bodkin and Mundy, by said Merchant claiming under this Stringer title, and that he did not avail himself of this opportunity but then admitted the superiority of the Stringer title and advised his said vendees not to defend said suit but either to surrender the land to the claimant under this Stringer title or compromise the suit on the best terms they could make, it would not be right for a court of equity to compel the defendants, George Bodkin and N. G. Mundy, to accept as a fulfilment of their part of the contract to convey this 786 acres with a good title to them this deed from him to them. This title, if not actually worthless, was at least so regarded by himself, and they ought not to be compelled to run the risk of losing this 786 acre tract, when it appears, that said Andrew Boggs, who ought to know the character of his title, obviously regarded this risk as so great, that he thought, the loss of it by them almost a certainty.

But there is still another reason, not noticed in the argument of this cause, which would of itself require the abandonment of this contract for exchange of lands of September 6, 1865 ; *i. e.*, the entire failure of the record to show, what were the terms of the contract. The bill alleges, that the defendants George Bodkin and N. G. Mundy were by said agreement in exchange for said 786 acres not only to convey the said 725 acres but also to pay the said Andrew Boggs $———. They neither conveyed said 725 acres of land to him

nor paid him said money. That these were the terms of this contract, is denied by the answers of these defendants, which were replied to generally ; and there is an entire failure of proof as to the terms of this contract or exchange. There is proof, that an exchange of these two tracts was agreed upon, but no one proves, whether there was to be any boot paid in the exchange by either party. The contract was reduced to writing, and this writing was in the possession of Jonathan M. Bennett, when this suit was instituted. He refused however to produce this written contract, though required so to do by the court; and in one of the later amended bills it is alleged by the plaintiff to have been lost. It never was produced, nor has its contents ever been proven. This of course would effectually prevent the Court from specifically enforcing this contract.

There were certain orders made during the progress of this cause, which have not been noticed. The first of these made August 29, 1884, granted the defendant George Bodkin for reasons set forth in the affidavit of his counsel leave to re-take the depositions of G. D. Camden upon giving notice to the plaintiff of the time and place of such examination. It will suffice to say in reference to this, that it is unnecessary to consider the merits of this order, as it was made at the instance of the appellants in the cause, and they can not therefore complain.

The reading of the deposition was excepted to by the plaintiff, and two exceptions indorsed on the back thereof. One of those exceptions was that "the notary continued the taking of depositions without commencing the examination of a witness and without notice or presence of the plaintiff first from December 11, 1883, until December 20, 1883, and from December 20, 1883, until December 25, 1883, and the plaintiff would have been subjected to unlawful expense and trouble to have attended on all of said days." This exception was overruled by an order made September 8, 1885 ; and portions of these depositions were read by the court at the final hearing of the cause. It appears, that, when these several continuances were made, a formal order was made by the notary stating, that no witness had appeared, and the "taking of these depositions is continued to the specific day,

at the same place, and between the same hours." This memorandum was dated and signed by the notary public, officially. The taking of these depositions was perfectly regular, and this exception to them was properly overruled by the court.

The plaintiff, by the manner in which these depositions were taken, was not compelled to attend at the place named for taking them five different times, as the exception seems to assume. In point of fact, he did not attend a single time; and, if he had attended when first notified, he could have asked, that the witness who did not attend, be summoned to attend by subpœna issued by the notary at the time fixed at the first continuance; and the presumption is, that the witness would have done so, and his deposition would have been taken at the second continuance instead of the fifth. The plaintiff had no right to object to this deposition being taken on the 28th. He utterly neglected to pay any attention to the notice he received to take this deposition, and he can properly attribute his absence, when the deposition was taken, to his own neglect, and not to the action of the notary in regularly continuing the taking of depositions from time to time.

The plaintiff also excepted to so much of the deposition of N. G. Mundy taken then as detailed any conversation or declaration made by Andrew Boggs, Jr., deceased, to him; and a like exception was taken to the deposition of John P. Bodkin, taken on November 28, 1885, and December 3, 1885. The court sustained these exceptions and ordered, that so much of these depositions as gives any personal transactions or communications between the witnesses as respective parties to this suit and Andrew Boggs, Jr., be suppressed. This suppression of this portion of these depositions was obviously right.

These orders should have designated the answers to specified questions which were thus suppressed; but the plaintiff can not complain in this Court that the answers were not so designated as the record does not show, that he asked the court below to be thus specific in making these orders; and it does not appear from the whole record, that he was injured by the manner, in which these orders were made, for it does

not appear, that the court below at the hearing of this cause read or considered any of the answers of these witnesses, which ought to have been suppressed as incompetent evidence; and, omitting all such evidence, there was ample testimony in the cause to justify the court below in reaching the conclusion which it did.

One of the errors assigned in the petition for the appeal of George Bodkin and N. G. Mundy and John P. Bodkin is, that the court erred in sustaining the exception of the plaintiff to the deposition of G. D. Camden, taken on the 19th of October, 1883, and filed in the cause. There is nothing, of which they can complain alleged in this ground of error; for on motion of the said defendants, Bodkin and Mundy, on August 25, 1884, they were given leave to re-take the deposition of Gideon D. Camden, and on August 23, 1886, they did re-take his deposition, and it was again taken on August 12, 1887. These depositions were read by the court, and the appellants could have sustained no injury from the first deposition of G. D. Camden not having been read by the court, as the depositions, which were read, contain all and more than what was contained in his first deposition. The appellant must show, not only that such orders made pending the cause was erroneous, but that he sustained injury thereby.

The depositions of Washington Boggs and V. M. Roby taken before Lewis Kelly, as notary public, on November 21, 1884, were improperly suppressed by an order made December 3, 1885, on exception of plaintiff to the reading of them. These depositions should have been read by the court; and in stating and deciding this case I have considered them as in the cause. They rather strengthen the position of the appellees and, it seems to me, were not very prejudicial to the plaintiff but really strengthened his case though the depositions were taken by the defendants.

The court by its order on December 2, 1886, sustained the exception of the plaintiff to the reading of an attested copy to the deed of trust from Daniel Stringer to Camden and Porter, trustees, filed with the defendants' answer, in tracing the title of Merchant to Daniel Stringer's patent, and in order to show that Andrew Boggs, Jr., did not have a good title to

the 786 acre tract claimed under a patent subsequent in date to Stringer's. This deed of trust is signed "D. Stringer," and was recorded on its acknowledgment by D. Stringer before the clerk of the County Court of Lewis, who was D. Stringer. This acknowledgment was, as held by the court below, fatally defective, if the Daniel Stringer, who executed the deed, was the same person as D. Stringer, the clerk, as a person can not acknowledge a deed before himself. There is no proof on the question, that arises, whether they were the same person, though it is very obvious it could have been proved by G. D. Camden, whether they were or not. It seems to me, that in the absence of all proof on this point the presumption on the face of the deed is, that they were the same person; for it appears, that the grantor was a resident of Lewis county, and that he signed his name "D. Stringer," just as the clerk signs his name. If so, the court did not err in excluding this copy of this deed as evidence. This however does not materially alter the case as presented to the court. In my statement and consideration of the case I have regarded Merchant's title as properly traced back and connected with D. Stringer's patent; that is, I have regarded the existence of this deed of trust as established. It is really immaterial, whether the valid title to this tract of land was in Merchant or D. Stringer, except as it might affect the question of adversary title claimed by David Alkire under his patent in 1856, and it could have no effect on this question, whether he had this deed of trust or not, as it is still abundantly proven, that Merchant claimed title under the Stringer patent; and, whether he actually had a good title, would of course depend on whether this copy of this deed of trust was or was not evidence. But that question is not involved in this cause, but simply whether he claimed title under the Stringer patent, and this is abundantly proven.

I am unable to find any errors in this record prejudicial to the appellants. The decree of the Circuit Court of May 3, 1881, must therefore be affirmed, and the appellee must recover of the appellants his costs in this Court expended, and $30.00 damages.

Affirmed.