## CHARLESTON.

### BODKIN *et al. v.* ARNOLD.

(BRANNON, PRESIDENT, *absent.*)

(ENGLISH, JUDGE, *dissenting.*)

Submitted June 14, 1897—Decided April 22, 1898.

1. RES ADJUDICATA—*Decree—Review on Appeal.*

When a decree is entered reserving the right to any party to further litigate any matter in controversy in the suit, such reservation may be reviewed on appeal by any party prejudiced thereby, and if no appeal is taken, such reservation becomes *res adjudicata*, and cannot be called in question by any party in any other suit or proceeding. (p. 97).

2. DECREE.

A decree is conclusive, as to the existence or nonexistence of every fact on which it depends, upon the parties to the suit and those claiming through them. (p. 98).

3.  Landlord and Tenant—*Lease—Estoppel.*
    Where a person claiming title takes a lease of the same land under a different title, in the absence of fraud or mistake, he is estopped to deny his landlord's title or possession.   (p. 103).

4.  Adverse Title—*Estoppel.*
    If a person owning an adverse title to land represents such title as bad and the title of another as good, and advises innocent persons to purchase under the latter title, and they do so by reason of his representations, he, and those claiming under him, will be estopped from setting up his title adversely to such purchasers, whether it be good or bad.   (p. 104).

Error to Circuit Court, Braxton County.

Action by George Bodkin and others against George J. Arnold in ejectment.   From an order setting aside a verdict for plaintiffs and granting a new trial, they bring error.

*Reversed.*

Dayton & Dayton and Morrison Corley, for plaintiffs in error.

Geo. J. Arnold and W. E. Haymond, for defendant in error.

Dent, Judge:

On the 23d day of September, 1890, a jury rendered a verdict in favor of George Bodkin and John P. Bodkin, plaintiffs, in an action of ejectment instituted in the circuit court of Braxton County, against George J. Arnold, defendant. On his motion the circuit court set aside the verdict, and awarded the defendant a new trial. Plaintiffs obtained a writ of error to this Court. The following is a statement of the case and the errors assigned adopted from the petition:

"On the 8th day of September, 1824, Daniel Stringer secured a patent on two thousand acres of land in what was then Lewis County, now Braxton County. On September 25, 1828, he conveyed this land to Camden & Porter, trustees, to secure certain debts. On December 1, 1834, Camden, trustee, sold this land to Samuel Merchant, and conveyed it to him on the 9th day of November, 1839. Merchant appointed Camden his agent, and as such agent,

on the 13th day of April, 1843, Camden leased the land to Andrew Boggs, Sr., for three years. Other leases were made under this Merchant title, one to Thomas Roby, and it is insisted one was made to David Alkire, in 1849, or 1850, from Camden, as agent for Merchant. While in possession of said land as Merchant's tenant, the said David Alkire, without notice of attornment to his landlord, on July 2, 1854, entered 786 acres of this 2,000-acre tract as vacant land. Survey was made October 11, 1855, by him, and on July 1, 1856, he obtained a patent for this 786 acres, and continued to reside on it, he and his sons and son-in-law, until about 1859, when he conveyed, by deed dated December 5, 1859, said 786 acres to Andrew Boggs, Jr., but, knowing that such title was defective, Boggs, Jr., did not have his Alkire deed recorded, and in the fall of 1860, took from Camden, agent for Merchant, a lease for the whole 2,000-acre tract, which included this 786 acres, for a period of two years, and remained in possession under said lease until the 6th day of September, 1865, when he attempted to convey the 786 acres under the Alkire patent to petitioner George Bodkin and N. G. Mundy in exchange for a tract of 725 acres in Upshur County, which they by written contract agreed to convey to him, and petitioner George Bodkin was put in possession of the 786-acre tract in Braxton. Shortly after, Camden, as agent for Merchant, demanded of petitioner George Bodkin to quit the possession of said land or become Merchant's tenant. Petitioner George Bodkin refused to surrender, and thereupon suit was instituted in ejectment in the United States district court of the state by Merchant, a nonresident, to recover such possession. After notice was served, petitioner George Bodkin and said N. G. Mundy, in the spring of 1870, met Boggs, Jr., on this land in Braxton, called his attention to the suit of Merchant's, and asked him to defend the same. This he absolutely refused to do, admitting that his title to the land was not good, and that the Merchant title was the better one, and he advised petitioner George Bodkin and Mundy to make the best compromise they could with Camden, agent for Merchant, characterizing his own title as 'not worth a damn,' and it was thereupon agreed that the exchange of

this 786 acres for the 725 acres in Upshur should be rescinded, and that petitioner George Bodkin should give to Boggs, Jr., a horse valued at $105 to pay him his expenses in moving to and from said 725-acre tract in Upshur. He did move off, and petitioner George Bodkin did give him the horse. The defense of the ejectment in the federal court was abandoned, and the said N. G. Mundy, on behalf of himself and the petitioner George Bodkin, his father-in-law, purchased and took conveyance on October 20, 1870, of this tract of 786 acres, from Camden, attorney in fact for Merchant. In the deed to Bodkin and Mundy from Boggs, Jr., for the 786 acres of land, Boggs, Jr., reserved a lien on it to idemnify him for any liens against or defects of title to the 725 acres gotten by him in the exchange. In the spring of 1876, William H. Boggs secured from Boggs, Jr., some kind of an assignment by parol contract of this lien, and in February, 1881, suit was instituted in chancery in the name of said William H. Boggs against petitioner George Bodkin and M. G. Mundy, and the administrator, widow, and heirs of Boggs, Jr., to compel said Bodkin and Mundy to have said contract, by their election, whereby said exchange of lands was made, either rescinded or specifically performed on their part; and in the bill and three amended bills filed in the cause the facts are set forth in minute detail, substantially as given above. In the meantime, the said N. G. Mundy, by deed dated June 9, 1877, had conveyed to petitioners, George Bodkin and John P. Bodkin, jointly, his half interest in the land, and said petitioners answered said bills in said chancery cause, setting forth the verbal rescission of the contract of the exchange with Boggs, Jr., and the purchase by them afterwards, of the Merchant title, and that they were holding under said Merchant title; and insisting that, inasmuch as the contract had long since been rescinded, it could not be specifically enforced, and that the bills should be dismissed. On May 3, 1887, a decree was entered in the circuit court of Braxton County in said chancery cause, which adjudged that the plaintiff William H. Boggs therein was entitled to a rescission of the contract of exchange made by his father, Boggs, Jr., and Bodkin and Mundy, and to a cancellation of the deed made by said

Boggs, Jr., to them, and further giving a writ of possession to him against petitioners for the possession of the 786 acres, and awarding costs against them in favor of the said plaintiff. But to this decree this express reservation is made: 'But it is provided that this decree shall not prejudice the right of the said defendants Bodkin to assert or maintain their right and title, if any they have, to the 786 acres of land aforesaid, derived by them or either of them from or under Samuel Merchant, in any suit or proceeding in which it may be involved.' From this decree an appeal was taken by petitioners to this Court, and on the 27th day of June, 1889, it was affirmed. See *Boggs v. Bodkin*, 32 W. Va., 566, (9. S. E. 891). Under and by virtue of the express reservation in said degree permitting petitioners to assert their right under the Merchant title, which had been purchased by them, they, as soon as deprived of possession under said decree, instituted this action of ejectment against the defendant George J. Arnold, to whom it had been conveyed by the said William H. Boggs almost immediately after the decision of this Court was rendered, and Edward Watson, his tenant. Petitioners' declaration was filed at the August term, 1890. A motion was made to quash the notice by the defendant at the same term. Issue was made by plea in vacation; again, on the 24th of November, 1890, in court; and also on the 7th day of January, 1892, in court. On said last day a jury was impaneled, to which the evidence was submitted, and a partial argument of the case was made by counsel, and various instructions were asked by petitioners; but the court, having reached the conclusion that petitioners' right under said Merchant title was adjudicated, notwithstanding said reservation by the decree in said chancery cause, cut short the argument of counsel, refused to give any of the instructions asked by petitioners, and gave an instruction for the defendant substantially directing the jury to find for the defendant because of said adjudication aforesaid. In this condition the jury were sent to their room, and soon returned with a verdict for the plaintiffs in said action, whereby they found for petitioners, by metes and bounds, the seven hundred and eighty-six acres of land; and thereupon, on the 13th day of

January, 1892, the said court below rendered the judgment complained of, and set aside said verdict on motion of said defendant, and granted him a new trial; to which action of the court plaintiffs filed their bill of exceptions, and had the facts certified. The defendant, after the said verdict was set aside, on his part filed some fourteen bills of exception to rulings of the court made in said trial, and caused them to be made part of the record. Plaintiffs assign the following errors to their prejudice: First. It was error to refuse to give to the jury the seven several instructions asked for by petitioners, and set forth in petitioners' first bill of exceptions. Second. It was clear error on the part of the court below to give on behalf of the defendant the instructions set forth in petitioners' second bill of exceptions, holding an adjudication of the Merchant title by said decree in said chancery cause, in the face of said decree's express reservation that it was not so adjudicated. Third. It was error for the court below to refuse to admit the record of the Stringer patent as set forth in bill of exceptions No. 3. Fourth. It was clear error for the court below, upon the evidence and the law, to set aside the verdict found by the jury in favor of your petitioners, and award to the defendant a new trial, and your petitioners earnestly insist that they are entitled to have said order set aside and judgment rendered by this Court upon said verdict for the said land."

This is, without material difference, the same statement of the case made by Judge Green, in delivering the opinion of the court in the case of *Boggs* v. *Bodkin*, 32 W. Va., 566, (9 S. E. 891), except some additional matters are added, including the assignment of errors.

The errors in the first, second, and third assignments are not proper for the consideration of the Court on a motion to enter up a judgment on the verdict of the jury, as they proved to be harmless error; but they would have been proper on a motion to set aside the verdict, if it had been for the defendant.

The last assignment, being for the error of the court in setting aside the verdict of the jury, raises the real merits of the controversy, being the question of *res adjudicata.* The defendant insisted that the decree in the case of

*Boggs* v. *Bodkin* was a final adjudication of the matters at issue in this action, and that the reservation of rights in said decree was *coram non judice*, and therefore void, and the circuit court so instructed the jury, but it disregarded the instruction, and found for the plaintiffs. The law of *res adjudicata* is laid down in the case of *Rogers* v. *Rogers*, 37 W. Va., 407, (16 S. E. 633): "An adjudication by a court having jurisdiction of the subject-matter and the parties is final and conclusive, not only as to the matters actually determined, but as to every other matter which the parties might have litigated as incident thereto and coming within the legitimate purview of the subject-matter of the action. It is not essential that the matter should have been formally put in issue in a former suit, but it is sufficient that the status of the suit was such that the parties might have had the matter disposed of on its merits. An erroneous ruling of the court will not prevent the matter from being *res adjudicata.*" *Bank* v. *Hays*, 37 W. Va., 476, (16 S. E. 561); *Sayre's Adm'r* v. *Harpold*, 33 W. Va., 553, (11 S. E. 16). It must be an adjudication on the merits. The dismissal of a suit without prejudice, or for want of jurisdiction, or any other cause that does not determine the questions raised by the pleadings, is not an estoppel. *Wanzer* v. *Self*, 30 Ohio St., 378; *Lang* v. *Waring*, 60 Am. Dec., 533; *Crews* v. *Cleghorn*, 13 Ind., 438; *Thurston* v. *Thurston*, 99 Mass. 39. "Accordingly, it is the general practice in this country, when a bill in equity is dismissed without a consideration of the merits, for the court to express in its decree that the dismissal is without prejudice. The omission of the qualification, in a proper case, will be corrected on appeal." *Durant* v. *Essex Co.*, 7 Wall., 109. "When a decree on its face appears to be a dismissal on its merits, and the court has not considered the merits, it on appeal will be reversed, and the case will be remanded, with directions to the lower court to enter a decree dismissing the bill without prejudice to the plaintiff to bring any proper suit." *Miles* v. *Caldwell*, 2 Wall., 45; *Hughes* v. *U. S.*, 4 Wall., 232; *Barney* v. *City of Baltimore*, 6 Wall., 289. In this Court, without remanding, the decree would be corrected. *Van Dorn* v. *Lewis Co. Ct.*, 38 W. Va., 267, (18 S. E. 579).

The same rule applies to a defendant who sets up affirmative matter in defense of a suit against him. If the court dismisses him as to such matter without prejudice, it is not an adjudication on the merits, so far as such defense is concerned, and he has the right to institute any necessary suit to obtain such adjudication. And if the court decides such cause without considering the affirmative matter, and without preserving his rights as to the same, he may appeal, and have the decree reversed for this cause alone. And if the court does consider the case on the merits, and finally determines it, and yet reserves a right to either party to continue the litigation in a different form, this would be appealable matter, which would be corrected, on appeal by the party prejudiced thereby. And if the party in the latter case fails to appeal, he is bound by the reservation in the decree, even though it should be erroneous, as it is an adjudication by the court that for some reason it has not jurisdiction of the matter reserved to the defendant and therefore sends him to another and different tribunal. When a court decides a jurisdictional question, either for or against the right, its decision is reviewable; but, if the party prejudiced thereby fails to have such decision reversed, it becomes *res adjudicata* as to him, and he can never afterwards be heard to say that it is erroneous.

In the case of *Adams* v. *Alkire*, 20 W. Va., 486, Judge Snyder says: "Nor can said deed be relied on as an estoppel against the defendants in said suit, because the decree directing the deed to be made expressly orders that ·it shall be without prejudice to any title or claim of the defendants to said land." And in the case of *Thorn* v. *Phares*, 35 W. Va., 771, (14 S. E. 399), Judge Holt, says: "The court, under our statute, could and ought to have settled this controversy, but for some good reason the court declined to do so, and closed the decree as follows: 'And this decree is to be without prejudice to the right and title of George Thorn to all or any part of the three hundred acres herein alloted the said William Phares, and in any controversy therefor that may properly be had between the said claimants.' In this state of facts, to take away a man's ownership of land, * * * who

never had his day in court, except in a suit in which his right and title is expressly saved to him, and to be without prejudice who is in visible ownership, yet comes promptly into the proper court seeking the right thus saved, such a denial, if well founded, must be based upon some fact of rare occurrence."

In the suit of *Boggs* v. *Bodkin* the following reservation was made: "Provided, that this decree shall not prejudice the right of the said defendants Bodkin to assert or maintain their right and title, if any they have, to the 786 acres of land aforesaid, derived by them, or either of them, from or under Samuel Merchant, in any suit or proceeding in which it may be involved." This reservation was made, no doubt, under the law that a court of equity will not settle titles to lands. *Cresap* v. *Kemble*, 26 W. Va., 603. But, whatever may have been the reason, it plainly shows that the cause, as to the then defendants' (now plaintiffs') title, under Samuel Merchant, was not determined on the merits, and therefore is no adjudication, and cannot be pleaded in bar to any other suit which it is involved. If the plaintiff in said chancery cause was aggrieved by this reservation, he had the right to have had it reviewed on appeal, and the defendants, if they had considered themselves aggrieved by the reservation, and that their title was established beyond dispute or controversy, had the right to have had the same corrected on appeal; but, on looking at their petition for appeal, we find that they made no special point as to the reservation being prejudicial to them, and, if they did, the Court of Appeals affirmed the decree, thus affirming the action of the circuit court in declining to pass on defendants' title, and reserving their right to future litigation, and thereby this reservation became *res adjudicata*, and cannot now be questioned by the then plaintiff and those claiming under him, even though the decree and its subsequent affirmation may have been erroneous. The defendant in his brief says: "It must be conceded that the court settled some point in entering a decree rescinding the contract of exchange made with Bodkin and Mundy by Boggs, and cancelling the deed." This is undoubtedly true, and it devolves upon us to ascertain what points were settled,

In Herm. Estop. § 279, we find it laid down that, "in order that a decree in one suit shall be conclusive in another, it must appear with reasonable certainty that the question in the record was litigated and decided in the first." And in Freem. Judgm. § 257: "Every point which has been either expressly or by necessary implication in issue, which must necessarily have been decided in order to support the judgment or decree, is concluded." "If a judgment necessarily determines a particular fact, that determination is conclusive, and in all subsequent actions between the same parties requires the same fact to be determined the same way." To ascertain what points or facts are determined by the judgment or decree, as the rule applies to both alike, and which are concluded thereby, we must resort to the record, the opinion of the court, and sometimes to parol testimony. Freem. Judgm. § § 272-275.

The plaintiff in the chancery cause of *Boggs* v. *Bodkin* prayed for the enforcement or rescission of a certain contract of exchange, and in the latter case for the cancellation of a certain deed. Defendants denied the right of enforcement or specific execution, because the grantor in the controverted deed had not title to the land at the time of the conveyance, but held under lease from a different title, under which defendants then claimed. On consideration, the circuit court decreed that "the court being of opinion that the plaintiff is entitled to a rescission of the contract of exchange of lands made by Andrew Boggs with George Bodkin and N. G. Mundy, whereby the said Andrew Boggs exchanged 786 acres of land in the bill mentioned for 725 acres of land in the bill mentioned, and to a cancellation of the deed made by the said Andrew Boggs to the defendants George Bodkin and Nimrod G. Mundy, dated the 6th day of September, 1865, it is therefore adjudged, ordered, and decreed that the contract of exchange and deed aforesaid be, and are hereby, rescinded, canceled, and annulled, and that the defendants George Bodkin and John P. Bodkin do surrender to plaintiff the possession of the 786 acres of land described in the said deed, and a writ of possession is awarded the plaintiff to cause him to have possession thereof." This was

the conclusion of the circuit court that the contract ought not to be specifically enforced, but should be rescinded, which, on appeal, was affirmed.

In arriving at this conclusion certain points at issue had to be determined by the court, and they then became *res adjudicata.* Turning to the opinion of the Court as announced by JUDGE GREEN, we find he says: "Yet in 1860 said Andrew Boggs took a lease of the whole 2,000-acre tract, including this 786 acres which had been patented to David Alkire, from Samuel Merchant, claiming under the Stringer title; and if he had any adverse possession under the Alkire title, which commenced in 1854, this hostile possesion was broken up by his claim as lessee under the Stringer title in 1860 and afterwards." Further down on the same page he says: "This title, if not actually worthless, was at least so regarded by himself, and they (the defendants) ought not to be compelled to run the risk of having this 786-acre tract, when it appears that said Andrew Boggs, who ought to know the character of his title, obviously regarded this risk as so great that he thought the loss of it by them almost a certainty." These extracts show the manner in which the court reached the conclusion not to specifically perform, but to rescind, the contract, and the points decided by them in so doing. These points, at least, were determined by them: (1) That Andrew Boggs' possession at the time he executed the deed sought to be canceled was under the Merchant lease or title. (2) That his own or Alkire's title was worthless, and so regarded by himself. (3) That in restoring him to possession it was to the possession held under the Merchant lease. Under section 7, chapter 71, Code, the only interest that the grantees took by virtue of the deed from Andrew Boggs was his right to possession under the Merchant lease, which was the only right or interest in said real estate which the grantor "could lawfully convey or assure;" and the court, in canceling the deed, could only restore him to the right or interest that passed thereby. (4) And that, so far as the Merchant title was drawn in question by the pleadings, it was fully recognized and established beyond controversy.

The reservation in the decree is not that the validity of

the Merchant title may be ever drawn in question, but that the defendants' rights which they assert as to having purchased the Merchant title may be further litigated. It is their ownership under, and not the Merchant title itself, that is the subject of the reservation.

The only question in issue left undisposed of by the decree was whether the plaintiff or defendants were entitled to possession under the Merchant title, and the court restored this possession to the plaintiff, but reserved to the defendants the right to further litigate this issue; and in restoring the plaintiff to possession as the tenant of Merchant, if defendants should thereafter establish that they were the lawful owners of the Merchant title, thereupon they would become the landlords and plaintiff their tenant. That these were the adjudications of the court is beyond all question, and we cannot inquire into their wisdom or legality, but we are bound by them as questions forever at rest, and not open to future litigation between the parties or those in privity with or claiming under them. Such being the truth, there can be no hesitation in holding that the circuit court erred in giving the instruction asked by the defendant in this present ejectment suit, and also erred in setting aside the verdict of the jury, if there were no other grounds for so doing, which remains for us to inquire.

The defendant reserved a large number of exceptions during the progress of the trial, none of which is it necessary to specially notice, if the undisputed facts and legitimate evidence sustain the verdict of the jury. As soon as the plaintiff in the chancery cause, or those claiming under him, were restored to possession of the property in controversy, they began, in dereliction of the rights of their landlord, to assert and set up an adverse possession under the Alkire title, and thereby terminated the tenancy, and gave the landlord the right to demand a restoration of the possession. Plaintiffs then instituted this action of ejectment against this defendant in possession and claiming adversely. It is now the settled law in this State that it is only necessary for the plaintiff, to maintain the issue on his part, to show that he had exclusive possession of the property in controversy for the period of ten years under

color of title at the time he was dispossessed thereof by the defendant. *Swann* v. *Thayer*, 36 W. Va., 46, (14 S. E. 423); *Ketchum* v. *Spurlock*, 34 W. Va., 597, (12 S. E. 832); *Duff* v. *Good*, 24 W. Va., 682; *Core* v. *Faubel*, 24 W. Va., 238. The plaintiffs complied with this law by producing in evidence the deed from G. D. Camden, agent for Samuel Merchant, to N. G. Mundy, dated the 20th of October, 1870, and the deed from N. G. Mundy to John P. Bodkin, dated 29th October, 1880, and deed from said Mundy to George Bodkin and John P. Bodkin, dated 9th of June, 1870, and having exclusive possession of the land under the Merchant deed from the time it was executed up until the time they were dispossessed, a period of over fifteen years. This fully established the plaintiffs' right to recover, and it then devolved on the defendant to prove a better title, and at the same time show that the plaintiffs' possession was not adverse, actual, visible, continuous, and exclusive, as to the title on which the defendant relies.

The defendant, to establish this on his part, introduced in evidence : (1) An entry of this same land by David Alkire, 22d July, 1854, and also plat and certificate of survey made 11th October, 1855; also grant from the commonwealth of Virginia, dated 1st July, 1856; also deed from F. W. Holden and others to W. H. Boggs, October 4, 1884; also a deed from W. H. Boggs and others to defendant, dated 3d December, 1887. These were to establish a better title. Then, to destroy the plaintiffs' adverse possession, he introduced the deed from Andrew Boggs, Jr., to George Bodkin and N. G. Mundy, dated 6th September, 1865 for said land; also portions of the record in the chancery cause of William H. Boggs against George Bodkin and others; also a certificate of the auditor showing seven hundred and eighty-six acres of land assessed on the land books of Braxton County for the year 1872, and for the year 1873, which was returned as "improperly charged," and afterwards returned delinquent for the non-payment of taxes, and sold and purchased for the State; also record of the ejectment suit of Samuel Merchant against George Bodkin, in the United States district court at Clarksburg, by which record it was shown that suit was begun on the 16th day of September, 1869; on the 1st day of April, 1870,

defendant appeared and pleaded not guilty; on the 12th day of April, 1886, sixteen years thereafter, William H. Boggs had his name substituted as a defendant in place of George Bodkin, and on the 6th day of April, 1887, had the case dismissed for want of security for costs.

The defendant claimed that George Bodkin and Nimrod G. Mundy took possession of the land under the deed from Andrew Boggs, Jr., to them, dated the 6th day of September, 1865, and that they have ever since held such possession under said deed, and, the Alkire title belonging to defendant, their possession could not be adverse to it. The plaintiffs, to rebut this, show that Andrew Boggs, Jr., took a lease for this land from Samuel Merchant through his agent, G. Camden, in the year 1860, and that after he deeded the land to George Bodkin and Nimrod G. Mundy, and Samuel Merchant brought his suit in ejectment against them in 1869, they notified Andrew Boggs, Jr., of that fact, and required him to defend it. He then admitted that his title was bad, refused to defend the suit, the contract between them was canceled, and he advised them to buy of Merchant; that, acting on his advice and admissions, they did buy of Merchant, and took the deed from Camden to Mundy of the 20th of October, 1870. The plaintiffs insist that the defendant is estopped from setting up the Alkire title (1) by the lease taken under the Merchant title by Andrew Boggs, Jr., in 1860; (2) by his conduct in refusing to defend the ejectment suit, and admitting that his title was bad, and that Merchant's was good, and advising his grantees to buy of Merchant. There are some other questions urged, reaching further back in time, but, if plaintiffs are right in either of the two propositions above, it is not necessary to examine into matters so remote from the real controversy.

The law is that, if one claiming title to land takes a lease of the same under a different title, he cannot afterwards deny his landlord's title, although he continues to hold over after his lease expires, unless his landlord have notice of an adverse claim by some act open and notorious. Tayl. Landl. & Ten. § § 89, 705-707; *Wilcher* v. *Robertson,* 78 Va., 602; *Campbell* v. *Fetterman,* 20 W. Va., 398. "It is only where there is fraud or mistake in consequence of which

he takes a lease of his own land that he will be estopped
to show this on termination of the lease." "Possession of
the tenant is possession of the landlord. Therefore, where
the relation of tenant and landlord exists, a conveyance by
the latter of the demised premises cannot operate as a
basis of an adverse possession." 12 Am. & Eng. Enc.
Law, 707; *Jackson* v. *Harsen*, 7 Cow., 323. There is no pre-
tense of fraud or mistake on the part of Andrew Boggs, Jr.,
when he took a lease under the Merchant title, and he did no
act that would give his landlord notice of an adverse claim,
and as soon as it was brought to the attention of his land-
lord that his grantees, Mundy and Bodkin, were claiming
adversely, and refused to recognize his possession, he took
proceedings at once to eject them. Boggs then refused to
defend his title, and again acknowledged the validity of the
Merchant title. By these acts, Boggs, and any one claim-
ing under him, is completely estopped from setting up a
claim to possession under the Alkire title. On his admis-
sion that his title was worthless, and acting under his ad-
vice, Mundy and Bodkin purchased under the Merchant
title.

In 7 Am. & Eng. Enc. Law, 18, the law is laid down that,
"where the owner or person having an interest in property
represents another as the owner, or permits him to appear
as such, or as having complete authority over it, he will be
estopped to deny such ownership or authority against per-
sons who, relying on his representations or silence, have
purchased or acquired interests in the property." This
is founded on the principle that no man can take advan-
tage of his own wrong. Even if his title was ever so good,
having deceived them into purchasing under another title,
he and his vendees are forever estopped, from asserting
his title against those deceived by him or their vendees.
"To defeat an action of ejectment, an outstanding title
must be a present subsisting operating legal title, on
which the owner could recover if asserting it by action."
*Wilcher* v. *Robertson*, 78 Va., 602. Change the parties to
this action, and allow the defendant to sue on his Alkire
title, he could not possibly recover, because the Merchant
deed, ten years' possession, and the two estoppels above
referred to would completely bar his action. Neither, then,

can he defeat the plaintiffs' action, because his defense is likewise barred. Plaintiffs might have further claimed that the Alkire title, having been put in issue in the case of *Boggs* v. *Bodkin,* and decided bad was *res adjudicata,* and that all the evidence introduced by the defendant to establish the same should for this reason be excluded from the consideration of the jury. As we have before seen, both the Merchant and Alkire titles were drawn in controversy in the chancery cause, and the court declined to enforce specific performance of the contract as prayed in plaintiffs' bill because the Alkire title was invalid, and the Merchant title was good, and Andrew Boggs, Jr., was tenant under the Merchant title. These three things were adjudicated and settled by the decree, except in so far as they are made matters of reservation. As to these three things, no reservation was made, but the only reservation was as to whether the defendants Mundy and Bodkin were the true owners of the Merchant title. In this suit their ownership is not denied, but this invalid Alkire title is again brought forward under a misapprehension of what was decided in the chancery cause. It is *res adjudicata.* "A decree is conclusive as to every matter actually and necessarily decided in the former suit." Freem. Judgm. § 256. "If a decree necessarily determines a particular fact, that determination is conclusive, and requires the same fact to be determined in the same way in all subsequent actions between the same parties. And a fact is necessarily determined to exist or not to exist, if its existence or nonexistence is required to support the judgment rendered." *Id.* § 257. The invalidity of the Alkire title was the fact that was determined by the court to exist in decreeing a cancellation of the contract and deed, and in refusing to require it to be specifically performed, and it is the same fact that caused the parties to rescind the contract of exchange in the first place.

With regard to the suit of *Parsons* v. *Riley,* 33 W. Va., 464, (10 S. E. 806), it is only necessary to say it has no reference to the proceedings of any court of record, but only applies to justices' proceedings, they not being authorized to permit the taking of nonsuits after hearing a case on its merits.

As to the tax matter raised by the defendant, it is impossible to see how the forfeiture of a different tract of land, or the same tract of land under a different title, could inure to the benefit of the junior title, if the land claimed was continued on the tax books, and the taxes were paid thereon by those claiming under the senior title, and none paid by those claiming under the junior title. This claim rests on the adverse possession of Boggs, which is plainly shown to have no existence.

The undisputed facts in this case fully establish the plaintiffs' right to recover possession of their land, of which they have been unjustly deprived. The plain duty of the court is to reverse the judgment of the circuit court in setting aside the verdict, and enter up judgment thereon, and direct an execution to restore plaintiffs to the possession of their property, which is accordingly done.

*Reversed.*