# CHARLESTON.

STRALEY *v.* PERDUE.

*(GREEN, JUDGE, absent.)

Submitted September 13, 1889.—Decided November 22, 1889.

1. RESCISSION—CONTRACT—EVIDENCE.

A written agreement under seal in regard to real estate may be rescinded in whole or in part by a subsequent parol agreement which has been fully executed and carried out, but to make such subsequent parol agreement effective as a rescission of the written agreement or any part thereof, it must be established by clear and conclusive proof.

2. RESCISSION—DEED.

The acceptance of a deed for a less quantity of land than that to which the grantee is entitled by his written agreement with full knowledge of the facts, accompanied with a surrender of said written agreement, constitutes a rescission of said written agreement to the extent of the number of acres omitted from said deed.

3. RESCISSION.

A case in which the conveyance of a part of the land described in an executory contract and a surrender of said contract is under the circumstances regarded as a full execution of the contract.

*O. Johnson* for appellants.

*C. W. Smith* and *A. W. Reynolds* for appellees.

ENGLISH, JUDGE :

The plaintiffs H. W. Straley and David E. Johnston filed their bill at November rules, 1885, in the Circuit Court of Mercer county against George W. Perdue, charging that on the 14th day of December, 1881, they purchased by contract in writing from said Perdue all of the coal contained on, in, beneath and over the surface of all and every part, parcel and acre of two tracts or parcels of land, one of which is situated on the waters of Simmon's Creek, of Blue-stone river, the same on which said Perdue then resided and which was conveyed to him by Henry Bell, but there was

*On account of illness.

excepted and reserved from said sale all the coal contained beneath twenty five acres of said tract, which tract was to be laid off commencing on the west line and to be run so as to include his house and buildings and the two springs on the south side of the house, and the other of which tracts was situated on the head branches of Mill Creek, being the same tract conveyed to defendant by Zachariah Perdue, situated in said county and estimated to contain fifty acres, and the said first named tract estimated to contain 150 acres, the quantity in each tract to be ascertained by actual survey, for which coal said plaintiffs were to pay at the rate of $3.00 per acre, except for the twenty five acres reserved as aforesaid, which the plaintiffs were to have the privilege of thereafter taking at the same price per acre if the defendant should desire to sell the same, which coal was to be paid for as follows, to wit: $50.00 in ninety days, $237.50 in one year, and $237.50 in two years from date. This amount being fixed upon the assumed fact that the coal in said two tracts of land contained 175 acres after deducting the twenty five acres reserved as aforesaid, and the sale being by the acre, a survey was provided for, and it was further provided that if upon said survey it was ascertained there was a greater number of acres of coal than the amount so estimated, the plaintiffs were to pay for the excess at the same rate, and if there should be a less amount, the plaintiffs were to have an abatement at the same rate per acre.

When the land was shortly afterwards surveyed by one J. A. Welch, the quantity of the first named tract was ascertained to be 155¼ acres, including said twenty five acres reserved as aforesaid, and in the second named tract forty and one half acres. The plaintiffs claim that they regarded the survey made and reported by said Welch as correct at the time it was made, as the defendant was familiar with the said lands, their boundaries, etc., and was interested in seeing they were correctly surveyed, and that defendant also regarded said survey as correct, as he raised no objection thereto and paid the expenses of the surveys without question as to the correctness of the same; that plaintiffs knew the locality of said tracts of land, but were wholly ignorant as to the lines and corners thereof or the exterior boundaries thereof, with

which the defendant, as they are informed, was well and fully acquainted, and as they aver, was perfectly familiar, having lived on said 150 acre tract for years, and they relied on defendant to superintend and conduct the surveys and to see that they were properly made, and for this reason they did not attend or take any part therein, and that the defendant, as they are informed, superintended and conducted the same and acted as guide for Surveyor Welch and his assistants, and pretended or professed to point out to him the lines and corners and boundaries of said tracts, and particularly of the 150 acre "home tract," by which lines and corners so pointed out by defendant the said Welch made said surveys, by which defendant conveyed to plaintiff said coal, and in accordance with which they paid defendant for said coal, and at the time of said conveyance they also purchased of the defendant the coal in said twenty five acres reservation referred to in the contract, making in said home tract 155¼ acres, which plaintiff then believed was the whole of said "home tract" as sold them by said contract, and so continued to believe until a short time before the institution of said suit. When they heard that defendant was offering to sell the coal under a parcel of some nineteen acres, part of the tract in the deed calling for 155¼ acres ("defendants home tract") claiming that he had not conveyed said parcel to plaintiffs, and they promptly notified the defendant that they claimed said property, and if it had not been paid for they were ready to do so, and demanded of defendant a compliance with his contract that they afterwards saw defendant and proposed to pay him for said coal not conveyed and demanded that he should convey it to them, but the defendant made some flimsy excuse and declined.

In the contract with reference to the purchase of said fifty acre tract lying on Mill Creek, it is stated that it is understood that one W. S. Witten, was setting up a claim to some thirty acres thereof, which was to be excluded from the sale if Witten held the same, of this tract the defendant only conveyed to plaintiffs seven and seven eighths acres, it being then understood that Witten would hold the residue, but plaintiffs allege that they have learned that defendant now claims that he will hold said residue against said Witten, and does not

intend to convey said residue or said nineteen acre parcel to plaintiffs.

Plaintiffs claim that they are not advised as to whether defendant's claim is superior to Witten's, but if such should be the case, they allege the fact was well known to the defendant at the time he conveyed to plaintiffs the seven and seven eighths acres of said tract, or rather the coal therein, and that they have a right to a conveyance of the same if defendant has title thereto.

Plaintiffs further allege that the defendant being well acquainted with the lines and corners of said "home tract," purposely and intentionally misled said surveyor as to the true lines and corners of said survey for the express purpose of excluding said nineteen acres therefrom, the coal in which he well knew he had sold to plaintiffs, or else acting in honest mistake and ignorance of the true lines and corners misled the surveyor and thereby caused said nineteen acres to be omitted from said survey; and that at the time of said conveyance he either knew the same had been omitted and concealed the fact from plaintiffs, or was ignorant and innocently mistaken and misled the plaintiffs, which resulted in mutual mistake, and in either event plaintiffs had failed to get what they contracted for, and he has not conveyed to them what he contracted to convey.

Plaintiffs farther state that a careful and accurate survey of said "home tract" recently made, shows that said tract including the nineteen acres aforesaid, contained 196 56-100 acres, and within the lines of defendant's deed to plaintiffs there are instead of 155¼ acres 177¼ acres, making an excess of twenty two acres within the boundaries contained in said deed, and 19 50-100 acres inside of said boundaries, thus making 41¼ acres, for which plaintiffs have not paid defendants; that as soon as they ascertained the true number of acres contained in said tract, they tendered the purchase-money for same with its accrued interest and demanded a deed for same, from defendant, which said defendant declined, and plaintiffs pray a specific execution of said contract.

Upon the calling of this cause on the 13th day of March, 1886, the defendant moved to dismiss the same for want

of jurisdiction, which motion the court over-ruled, and defendant also moved the court to compel the plaintiff D. E. Johnston to answer question No. 3, propounded to him on cross-examination by defendant in his deposition in this cause, and also to compel H. W. Straley to answer questions No's. 8 and 9, propounded to him by defendant's attorney on cross-examination in his deposition taken in this cause, and the court regarding said questions impertinent, irrelevant and immaterial, refused to compel said answers, and thereupon the defendant obtained leave to file a demurrer and his answer to plaintiff's bill, which demurrer was set down for argument, and the plaintiff's replied generally to the answer aforesaid, and said cause was transferred to Summers county.

The defendant by his answer denied every material allegation in the plaintiff's bill contained, and especially any attempt to deceive or defraud the plaintiffs in regard to the number of acres of coal contained in said "home tract," claiming that being ignorant of the locality of the lines and corners of said tract, he employed a man by the name of Belcher, who professed to be acquainted with said lines and corners to go with said surveyor Welch, and point them out, which he attempted to do, and said Welch cursed him and refused to be guided by him, and declared he would run said land by the papers in his possession, and the defendant claims that after he was advised that said surveyor had left out said strip of land not included in the survey made by him, he informed said David E. Johnston about the matter and asked him if he was going to take the strip of land supposed to have been left out of the survey made as aforesaid, and said Johnston replied he would not take it, as it might get the defendant into trouble over it some time; that when said fifty acre tract was surveyed, it was found to contain only forty two acres and that seven and three eighths acres was all the land in said tract not conveyed by said supposed Witten claim, and when defendant executed the deed for said seven and three eighths acres, said Johnston positively refused to accept a deed for the balance of said tract, to wit: 34⅝ acres, or to pay him for the same, and it was then and there understood between the parties that the plaintiffs would have nothing to do with said

tract or the 34⅝ acres claimed by said Witten. The defendant farther alleges that the plaintiffs were apprised of the fact, long before the bringing of this suit, that there were twenty two acres more of land in the survey made by said Welch when they were trying as they allege, to effect a settlement of the 19 39-100 acres, by tendering the amount of purchase-money as they claim, and they never mentioned the fact that there had been a mistake in the survey of said Welch of twenty two acres, when they well knew that said mistake had been made.

The defendant also claims that the plaintiffs purchased an adjoining tract known as the McNutt tract, and that in having the same run off they embraced in the boundary thereof, said 19 39-100 acres above mentioned, and afterwards sold said McNutt tract for a much larger price than the adjoining lands, and being unable to make a good title for said strip of land they are now seeking to obtain a title for said land for which they declined to receive a deed when the other portion of said "home tract" was conveyed, after they have admitted the contract to be fully complied with by accepting a deed, drawn by themselves, for a tract of land surveyed by their own surveyor, who fully apprised them as to all the facts in regard to said boundaries.

Several depositions were taken and filed in the cause by plaintiffs and defendants, and on the 25th day of February, 1887, the court proceeded to enter a decree in this cause, directing that the plaintiffs pay to the defendant George W. Perdue, or to B. L. Hoge, general receiver of the court, the amount of $3.00 per acre with accrued interest for the 41 39-100 acres of the "home tract" of land in the bill and proceedings mentioned, and the farther sum of $3.00 per acre and accrued inserest, for the 34⅝ acres of the Mill Creek tract mentioned in the bill and proceedings in this cause, amounting at the date of said decree to $267.14, and directed that upon payment of said sums of money, George W. Perdue should execute and file among the papers in the cause a deed in which his wife should unite conveying to plaintiffs the coal under the 19 39-100 acres of land mentioned in the plaintiff's bill,

which constitutes part of said George W. Perdue's "home tract," and that said deed should convey such timber and contain such covenants of title, and provide for such privileges as are provided in the title bond from defendant to plaintiffs filed as Exhibit "A," with their bill, and that said defendant upon the payment of the purchase-money therefor as aforesaid, should convey to plaintiffs the coal under said 34⅝ acres of land by deed with covenant of special warranty of title, which he should file among the papers of the cause, and upon his failure so to do, directing a special commissioner therein appointed, to make said deeds of conveyance following the terms of said title bond, and from this decree the defendant applied for and obtained an appeal to this Court and supersedeas to said decree. Upon the question raised as to the jurisdiction the Circuit Court committed no error in sustaining jurisdiction, as the provision in the Code providing that suits may be brought in any county in an adjoining circuit if the Judge of the Circuit Court be interested in a case, which but for said interest would be proper for the jurisdiction of his court, is merely cumulative, and does not prevent the case from being heard by another Judge in the circuit in which the defendant is presiding as Judge—the demurrer was properly over-ruled.

There can be no question as to the sale made by the defendant, George W. Perdue, on the 14th day of December, 1881, by written contract of that date, of all the coal in the tract known as the "home tract," with the exception of twenty five acres thereof expressly reserved, or that by the same agreement he sold all the coal in another tract in the tract conveyed to him by Zachariah Perdue, situated on the head branches of Mill Creek, both of which tracts are situated in Mercer County, and that the plaintiffs became the purchasers thereof, for the price of three dollars per acre. It however, appears that in surveying said "home tract" for the purpose of properly describing the same, that the surveyor (although furnished by the plaintiffs with the courses and distances and aided by the defendant and one Belcher, who claimed to have known the tract for years,) either from his refusal to be guided or directed by the defendant or said Belcher, as to the locality of the lines and corners, a strip of

19 39-100 acres was not included in said survey which should have been, and which belonged to and was a part of said "home tract." Said Belcher in his deposition, after stating that he informed surveyor Welch that a corner of said land was in the head of "Broad hollow," was asked: "In surveying your land, and what surveying Capt. Welch did for Mr. Johnston & Straley, did he make the survey by what the owners of the land had to say about the lines, or did he rely on the papers and deed to make the survey correctly?" in his answer describes said surveyor's conduct in the following unique and graphic language: "He was just like some old bull looking through a brier-patch, whichever way he wanted to go that was the way he went."

The plaintiffs in their bill allege that at the time they paid to defendant the purchase-money for said coal, and took the deeds aforesaid, and surrendered said title-bond, they then believed they had paid for all the coal embraced in their said contract made with the defendant on the 14th day of December, 1881, except that claimed by W. S. Witten out of the fifty acre tract, until a few months before the bill was filed, they incidentally heard that the defendant was offering to sell the coal in and under a parcel of some nineteen acres, part of defendant's "home tract," and that he claimed to not have conveyed said parcel of nineteen acres to the plaintiffs. The defendant in his answer denies this allegation and claims that the surveyor J. A. Welch, agent of plaintiffs, informed the plaintiffs at least, H. W. Straley, one of the plaintiffs, about the 19 39-100 acres left out of said survey, and he himself talked with D. E. Johnston about it, and for that reason said Johnston refused to have a deed made for it. In regard to notice, that said 19 39-100 acres was not included in the survey made by Welch, or embraced in the deed, the plaintiffs having the affirmative their evidence must preponderate. Upon this question, while it is true that the plaintiff, David E. Johnston, in his deposition states that he was not aware that said 19 39-100 acres had been left out of the survey made by Welch, and conveyance made by G. W. Perdue, until a short time before this suit was brought, and H. W. Straley in his deposition states that he did not know or discover that

said 19 39·100 acres were left out as aforesaid, until about twelve months after the deed was delivered to plaintiffs by said G. W. Perdue, yet on the other hand, George W. Perdue and Silas Perdue both swear that when said deed was delivered to the plaintiff, David E. Johnston, he asked said Johnston if Capt. Welch had platted in this strip adjoining the McNutt land that he left out of his first survey, and he told me he had not. I asked him if he would have it plotted in and include it in the deed, and his answer was, "we had better not, it might get you into trouble;" and Silas Perdue swears that he was present when said deed was delivered, and confirms said George W. Perdue as to the conversation had with said David E. Johnston, in regard to said 19 39-100 acres; and J. A. Welch, the surveyor, when asked, "At the time you made the survey of said land, a plat of which you say you delivered to H. W. Straley and others, what impression had you as to the correctness of the same, and what representations, if any, did you make to said Straley, and also as to the correctness of said survey and map? answered, "I was not satisfied about it from the fact that the white oak and chestnut oak called for "one hundred poles from the fallen sourwood," was not found,. and when Caswell Branch was reached, without changing the bearing from the fallen sourwood and having no information as to which of the several small streams or hollows entering Caswell Branch, which seemed to me to be too small to be designated by name, I have given local names to several branches much larger than the one now called 'Broad Hollow.' I called Mr. Straley's attention to it, and there were so many questions growing out of the great number of surveys which were made and reported upon, I do not remember that I ever had any additional instructions about the matter;" and when H. W. Straley was asked on cross-examination, "Capt. Welch states in his deposition given in this case that he apprised you of the trouble about the East line of the Perdue tract after it was surveyed by him; is that statement true or false?" answered, "I have no recollection that he ever said anything about it to me, till after I heard that G. W. Perdue had offered the disputed piece for sale." Upon the question then as to notice to the plaintiffs, that

this 19 39-100 acre strip was not included in the survey made by said Welch before said deed was made and delivered by the defendant George W. Perdue, if the witnesses be entitled to equal credit, and no good reason appears in the record why they should not, the preponderance of the evidence is clearly with the defendant.

The plaintiffs, as to the allegation in their bill that the defendant prevented said 19 39--100 acres from being included in said survey and conveyance either by fraud or mistake, and that it was accomplished by the defendant whether wilfully and fraudulently, or mistakenly, by stopping the surveyor short on a given line of said survey of the true and proper corner, and running off at right angles, by which the nineteen acre parcel was left out or excluded from said survey and calcu ation of quantity, must also assume the affirmative and preponderate in the testimony; but when we refer to the evidence of the parties who accompanied said surveyors and heard his declarations and witnessed his conduct, it appears that he cursed those who proposed to give him any information in regard to the lines and corners, and told them he was running by the papers; and the evidence discloses the fact that the papers referred to were the courses and distances which had been copied by plaintiffs and furnished to him, and the evidence shows that he was in no manner controled, guided or deceived by any person who attended said survey; and said surveyor Welch, whose testimony was taken in the cause, does not pretend that he was misled or deceived by any one in regard to the lines and corners of said survey. H. D. Belcher, who was present, states that he was unable to find the corner in Broad Hollow, although he had helped to run the survey before, but showed him a point in ten or fifteen steps of where the corner has since been found, but said surveyor went back to a point where he had made a corner and run through towards Caswell's branch, and when asked by said Belcher to run in another direction he said "No, the company had furnished him courses and he had to run by them." It can not then be claimed that this surveyor was misled by any person, or in any manner deceived by representations made to him as to the locality of said lines or corners.

It may have been intended, and no doubt was, to include in the survey made by said Welch the entire home tract of said G. W. Perdue, with the exception of the twenty five acres reserved including the buildings and springs, but the evidence shows that after said 19 39–100 acres had been left out of said survey and the plaintiffs had notice of said omission, for some reason best known to themselves the plaintiffs declined to include said 19 39–100 acres in the deed of conveyance from George W. Perdue to themselves, and when the matter was brought to their attention about the time the deed was ready to be delivered, the plaintiff Johnston told the defendant, "we had better not do that, it might get you into trouble." It appears that the plaintiffs had executed and acknowledged a deed for the McNutt tract a few days before the deed from George W. Perdue was acknowledged and delivered, and the plaintiff D. E. Johnston and H. W. Straley both state that they sold said 19 39–100 acres to George M. Bartholomew, trustee, with and as part of the McNutt tract, said Straley stating that the 19 39–100 acres referred to laps on the B. G. McNutt land. It may have been considered by the plaintiffs that the McNutt title which they had already acquired was the better, at any rate the weight of the evidence shows that for some cause the plaintiffs declined when their attention was called directly to the omission of said strip, to have the same included in said conveyance, and surrendered the title-bond to the defendant.

In the case of *Ballard* v. *Ballard,* 25 W. Va. 471, this Court held that a written contract for the sale of land may be rescinded by a subsequent parol agreement, but to make such agreement effectual it must have been fully executed and be established by clear and conclusive proof. In the case under consideration the agreement, so far as said 19 39–100 acres was concerned, was certainly rescinded, the plaintiffs declining to include it when their attention was called to it; and the deed was executed and delivered omitting to convey said strip; and the title-bond was surrendered. What more could have been done to fully execute the rescission of the contract as to said 19 39–100 acres?

In the case of *Glass* v. *Hulbert,* 102 Mass. 24, which was a case somewhat similar to this, "The defendant made a conveyance

of land to the plaintiff not actually including a certain lot of seventeen acres which defendant had represented, and plaintiff had been led to believe, to be covered by the deed. By a proviso in the deed, plaintiff assumed the burden of maintaining a line fence being induced to consent to the proviso by false representations of the defendant in regard to the amount of fence which his neighbors would be obliged to maintain. Part of the purchase-money for the land was paid in government bonds, the defendant agreeing to take them at par, and pay the interest and premium and there was a considerable sum due the plaintiff thereon. By a bill in equity the plaintiff prayed that the defendant be compelled to convey the additional seventeen acres, to release plaintiff from the proviso and to pay the amount due on the bonds, *Held*, that the conveyance prayed for could not be decreed ; that the remedy relating to the proviso and to the bonds was adequate at law; and that as the plaintiff did not offer to rescind the whole contract, there was no remedy in equity."

And in the case of *Miner* v. *Edwards, et al.*, 12 Missouri 137, it is held that "The acceptance of a deed of inferior value to that to which a grantee is by his contract entitled, is equivalent to a waiver of such better deed." See *Phelps* v. *Seely, et als.*, 22 Gratt. 573; Hilliard on Vendors, ch. 10, § 19, p. 173, also *Dearborn* v. *Cress*, 7 Com. R. 48, and *Balwin* v. *Satter*, 8 Paige R. 473, *Jarrel* v. *Jarrel*, 27 W. Va. R. 743. If any evidence was wanting as to the intention of the defendant George W. Perdue to sell the coal under his land at $3.00 per acre, and that he had no purpose of excluding any portion of his coal in said land from sale, it is found in the fact that on the same day he executed and delivered a deed for the coal under the home tract, he also executed and delivered a deed to plaintiffs for the twenty five acres he had reserved around his house. The evidence in the case clearly indicates to my mind that the parol agreement to rescind was not only made but fully executed as to the 19 39–100 acre tract. As to the fifty acre tract on Mill Creek, it appears that there were but forty two acres of it, and on account of a claim set up to a part of it by one Scott Witten, which the plaintiff Johnston regarded as a better title, he declined to accept a deed for

more than seven and three eighths acres of that tract, and for that amount a deed was made and accepted which waived and rescinded the former agreement.

For these reasons the decree rendered in this cause on the 25th day of February 1887, must be reversed and the plaintiff's bill dismissed, and the appellees must pay the costs of this appeal.

REVERSED.