OF THE

# SUPREME COURT OF APPEALS

## OF WEST VIRGINIA.

## SPRING-SPECIAL TERM, 1899.

### CHARLESTON.

CUNNINGHAM *v.* CUNNINGHAM.

Submitted September 26, 1898—Decided March 18, 1899.

1. SPECIFIC PERFORMANCE—*Equity Pleading—Admissions of Answer—Statute of Frauds.*

    If an answer admits an oral contract for the sale of land, the same, or substantially the same, as that alleged in a bill, and the statute of frauds is not relied upon as a defense, no proof of the contract, or of delivery of possession under it, is required, and no writing is required to attest the contract. (p. 2).

2. SPECIFIC PERFORMANCE—*Oral Contract—Recission of Oral Contract—Possession.*

    A contract, written or oral, for the sale of land, may be orally rescinded; but mere oral recission does not devest the party of his estate, or bar him of specific performance, without destruction of the written contract, or, if oral, surrender of possession. (p. 3).

3. SPECIFIC PERFORMANCE— *Oral Contract—Waiver—Possession.*
    Oral waiver or abandonment of an oral contract for the purchase of land will, in equity, defeat specific performance asked by the purchaser, if possession be surrendered to the vendor, but not otherwise. (p. 4).

4. SPECIFIC PERFORMANCE—*Oral Contract—Waiver—Conversations.*
    An oral waiver of a contract, oral or written, to defeat specific performance sought by the purchaser, must be clear, positive, and above suspicion, and, besides, cannot be proven by mere loose, casual conversation. (p. 4).

Appeal from Circuit Court, Wetzel County.

Bill by Thomas M. Cunningham against Thomas Cunningham. Decree for plaintiff. Defendant appeals.

*Affirmed.*

W. S. WILEY and E. O. KEIFER, for appellant.

THOS. P. JACOBS, for appellee.

BRANNON, JUDGE:

This is a chancery suit in the circuit court of Wetzel County by Thomas M. Cunningham against Thomas Cunningham to enforce specific performance of an oral contract for the sale of land, in which a decree for the plaintiff was made, from which the defendant appealed.

Counsel for defendant argues the case as if there were no contract of sale, on the idea that the contract alleged in the bill is not the same as that proven or admitted in the answer. The bill sets out an oral contract, and the answer admits it, and does not rely on the statute of frauds as a defense, and therefore there is no need of proof of the contract or of a writing to show it. *Bariett* v. *McAllister*, 33 W. Va. 738, (11 S. E. 220); 9 Enc. Pl. & Prac. 713. Of course, the contract admitted must not be a substantially different one from that alleged in the bill, to apply the above rule. There is no such substantial difference in this case. The bill states the sale of the land on certain terms, and the answer admits it as so stated; the only difference being that the bill says that the defendant was, within a reasonable time, to make a deed retaining a lien for deferred purchase money, while the answer, admitting the sale and its terms, says an executory contract was to be

made, and a deed on payment of purchase money. What difference to either party by what form of written instrument the sale was to be shown? A deed with a lien was just as safe to the vendor, and important to the vendee, as conferring at once legal title, enabling him to sell, and telling the world what lien rested on the land, and avoiding the necessity of suit to get a deed in case of death or refusal of the vendor to make the deed. The land is in the oil region, where such a deed, to show title, would be material to the plaintiff, and justify him in insisting upon it, if such was the contract. The important question is whether there was a contract or not, and its terms, not the form of writing manifesting it. Defendant says, also, that the contract was that the plaintiff was not to cut timber. This is not stated in the bill, but it does not make a material difference, as equity would enjoin cutting timber, whether so agreed or not, if it depreciated the vendor's security for his money. The difference in the contract as stated in bill and answer being immaterial, it is no bar to specific preformance. *Barrett* v. *McAllister, supra.*

The plaintiff took possession of the land. Defendant says that he did so as tenant, not under the said oral contract. This would raise the question whether mere remaining in possession after the contract could be considered as delivery of possession required by equity to make an oral contract good, as likely it would be; but this question does not arise, because the contract is admitted, and the statute of frauds is not relied upon, and neither a writing, nor evidence of delivery of possession to take its place, is required. Besides, the evidence of plaintiff that he took possession first under the contract of sale conflicts with that of the defendant, that possession was first taken as tenant, and we would not reverse the circuit court under this head.

Another defense is that the contract was orally rescinded, or, I should rather say, waived, renounced, or abandoned, by plaintiff, as there surely is no definite contract of recission. Counsel for the plaintiff takes the position that a contract of recission, or a waiver of the sale contract, is not valid unless executed by a surrender of possession. I think this is so. There was no surrender of possession,

nor anything further than mere words. The contract vested an equitable title in the plaintiff, and he could not devest himself of it by mere word of mouth, unaccompanied by the surrender of possession, any more than an oral sale can be enforced unless accompanied by delivery of possession. There is no doubt but that an executory contract for the sale of the land, whether written or oral, can be rescinded or waived, in equity by word of mouth, if possession be given up, or the writing be destroyed, but not without something done by way of execution of the rescision or waiver. *Beggs* v. *Bodkin*, 32 W. Va. 566 (9 S. E.891); *Straley* v. *Perdue*, 33 W. Va. 375, (10 S. E. 780); Fry, Spec. Perf. § 691; Wat. Spec. Perf. Cont. § 386. But such verbal recission or waiver, because it is merely verbal, must be clear, positive, and above suspicion, and it must be proven not by mere loose conversation. "The court requires as clear evidence of the waiver as of the existence of the contract itself. Abandonment of a contract, according to the law of this court, is a contract in itself." And, accordingly, "loose conversation, which was alleged as a waiver of a contract for a lease, was held not to amount to a new contract." Fry, Spec. Perf. § 698; *Falls* v. *Carpenter*, 28 Am. Dec. 593. "Declarations of a vendee, after entry and valuable improvements, that he would throw up his article, and hold as tenant to his vendor, his possession continuing as before, are insufficient to devest his interest." *Bowser* v. *Cravener*, 56 Pa. St. 132. Just so is this case. This sale was made in April, 1889; and plaintiff took possession, made considerable improvements, cleared ten to fifteen acres of land, and paid taxes, and was still in possession when he brought this suit in January, 1897. The waiver alleged was in March, 1892. Why did defendant let the plaintiff remain in possession five years, paying no rent, if there was such waiver or recission? Plaintiff paid two hundred and thirty dollars on the one thousand dollars purchase money. The parties engaged in a quarrel or disagreement, owing to the defendant's forbidding the plaintiff from cutting timber, and, they casually meeting at a lumber shanty, the defendant, as he states it, wanting more pay on the land, asked plaintiff what he was going to do about it, and said that they had better fix it up, and had

better get writings drawn; and plaintiff replied that he had no fixing to do, but was going to give the land up, as the defendant would not let him cut timber, and the defendant consented. There is some evidence of loose, casual declarations made by plaintiff on other occasions to third parties to the effect that the defendant would not let him cut timber to help him pay for the land, and that the defendant could take his land. Of course, these declarations, made to third parties when the defendant was not present, cannot be considered a contract of waiver, and can only go in corroboration of the defendant's version of what took place at the lumber shanty. The witnesses differ materially as to the words and import of that conversation at the lumber shanty, showing how unsafe it is to go upon loose conversations in grave matters, which the statute of frauds sought to have put in written memorial. The plaintiff squarely denies that he said he would give up the land, and says that when asked by his uncle, the defendant, what he was going to do about paying, replied that he would do nothing more till a deed was executed. The evidence is materially conflictive as to the declarations of plaintiff as to abandonment of the contract, and, the circuit court having found against it, we cannot reverse the decree. I am, however, free to say, under the law above given, that this loose conversation, taken even as the defendant claims it, is not sufficient to cancel the contract and destroy defendant's vested interest. The declarations were likely only angry declarations when the plaintiff was worried and excited about his uncle's refusal to let him cut timber, even if we take them for the most they are worth under the defendant's statement of those declarations. People must put their contracts and cancellations of contracts in writing, and not expect courts to act on loose conversations, related differently by different witnesses, especially where the burden is on him who pleads that a once valid contract has been annulled by a subsequent agreement or waiver to show the same clearly.

The plaintiff explains his delay of payment by the defendant's neglect to make a deed. It was the duty of defendant to execute such deed. *Clark* v. *Gordon*, 35 W. Va. 736, (14 S. E. 255). The decree required the defendant to

convey the land on payment of one thousand one hundred and twenty dollars and thirty-five cents, the amount unpaid and due at the date of the decree, and a reservation of lien to secure what was thereafter to become due. Regarding the decree as right, we affirm it.

*Affirmed.*