# CHARLESTON.

## KOEN *v.* KERNS *et al.*

Submitted January 30, 1900—Decided March 24, 1900.

1. DEED—*Mistake—Evidence—Reasonable Doubt.*

   In a suit to reform a deed for mistake, the evidence of such mistake must be clear, convincing, free from reasonable doubt, and not conflicting. The deed is presumed to be correct until it is shown by such evidence to be incorrect. (p. 578).

2. DEED—*Executory Contract—Variance—Mistake.*

   If a deed made under a prior executory contract varies therefrom, it is presumed that the deed, so far as it departs from such contract, represents a change agreed upon by the parties from the terms of the prior contract, and the deed represents the final contract of the parties, and such contract and all antecedent propositions, negotiations, and parol interlocutions on the same subject are merged in the deed. It may, however, be shown that such variance is due to a mistake in drawing the deed by such evidence as the law in such case requires. (pp. 579-580).

Appeal from Circuit Court, Marion County.

Bill by Oliver N. Koen against Elijah Kerns and others. Decree for defendants, and plaintiff appeals.

*Affirmed.*

U. N. ARNETT, Jr., R. F. FLEMING and A. B. FLEMING, for appellant.

W. S. MEREDITH, for appellees.

BRANNON, JUDGE:

Kerns leased to Nay, by lease dated September 19, 1892, a tract of seventy-five acres of land in Marion County for development of oil. This lease was assigned by Nay to Koen, and by Koen to the South Penn Oil Company. Said lease reserved to Kerns a royalty of one-eighth of the oil which might be produced from the land. By a deed dated

September 28, 1892, Kerns sold to Koen one undivided moiety of the one-sixteenth part of all the oil underlying said land, and thus Koen would get by this deed one-fourth of the one-eighth royalty reserved by Kerns in said lease; that is, one thirty-second part of all the oil produced on the land. Afterwards on May 28, 1895, Kerns sold, by deed, to Bartlett, one undivided moiety of the one-sixteenth of the oil in said land, Bartlett thus getting one thirty-second part of all the oil. By deed dated June 5, 1895, Bartlett conveyed to Hayden one-half of the oil which Kerns had conveyed to Bartlett, Hayden thus owning one sixty-fourth part of all the oil produced, and Bartlett a like share. Koen claims that a mistake was made in the deed of September 28, 1892, from Kerns to Koen, in this: That the contract was for the purchase of a moiety of Kern's one-eighth royalty, and not a moiety of a sixteenth; that the intent of Kerns was to sell and convey, and the intent of Koen was to purchase, not merely the half of a sixteenth, but a half of an eighth of the royalty. Koen says that Kerns had agreed to sell for two hundred and fifty dollars half of the one-eighth royalty owned by Kerns; that he had so agreed with Nay; that he (Koen) had agreed to purchase on that basis; that, accordingly, being informed by Nay of this agreement, a deed was prepared, to be executed by Kerns, which deed, as prepared, conveyed to Koen "the one undivided moiety of the one undivided eighth part of all the oil and gas produced and saved from and underlying the surface of a certain tract," etc.; that when the prepared deed, which was committed to Nay to have it executed, was taken into the country to Kerns' home for execution by Kerns, a question arose in the company there present as to the meaning of the word "moiety" in said deed, no one present seeming to know the meaning of that word; that Kerns on the occasion said that he had only sold Koen one-half of the royalty of one-eighth, which would be one-sixteenth of the oil under the land, and thereupon the word "eighth" in said deed as prepared was erased, and the word "sixteenth" inserted in place thereof; that all this was done under the belief by Kerns and the notary and every person present that the deed would convey to Koen one-half of the royalty reserved in

said lease; in other words, one-sixteenth of all the oil under said land. Koen claims further that, after said deed was so altered under such mistaken belief, Kerns executed it, and that he (Koen) was not present at its execution, and was not aware of the change made in it until long after its recordation; that the deed was brought to him; that he did not examine it; that no one informed him of the change made in the deed as drafted until long after it was recorded; and that he had accepted that deed, and placed it on record, under the belief that the deed conveyed to him half of said royalty, not a fourth of it, and under the belief that the deed had been executed as it was prepared. Koen, therefore, claims one thirty-second more of the oil than that deed gives him. This is the same thirty-second claimed by Bartlett and Hayden under the deed from Kerns to Bartlett dated May 28, 1895. Just here the parties clash. Koen claims that Bartlett and Hayden knew of this mistake, and conspired together to cheat and wrong him by obtaining from Kerns the deed to Bartlett of May 28, 1895, and that they obtained it with full notice of such mistake; and therefore the bill was filed by Koen in this case in the circuit court of Marion County to correct the alleged mistake in the deed of September 28, 1892, so as to make it convey to Koen one-sixteenth of the oil in said tract, instead of one thirty-second, and to annul the rights of said Bartlett and Hayden under the said deed from Kerns to Bartlett. The circuit court of Marion County dismissed Koen's bill, and he appealed the case to this Court.

The pivotal, crucial question in this case is, was there a mistake made in the execution of the deed from Kerns to Koen for a share of the oil? More closely, did Elijah Kerns intend to sell one-sixteenth of the oil, or one thirty-second thereof? Should the deed have conveyed a moiety of an eighth of the oil, or a moiety of a sixteenth? In the morning of the day, according to Nay's evidence, Nay asked Kerns if he had offered to sell his royalty, and Kerns replied that he did not know, and asked what he would give for it, to which Nay responded that he thought he could make him (Kerns) two hundred and fifty dollars out of it, and Kerns told him to sell it. This is the whole

preliminary contract. It is doubtful whether it was a final, binding contract. It is doubtful whether it had finality rendering it enforceable. At any rate, it was not in writing; not enforceable. What was sold, if it is considered a sale to Nay? If Nay was only authorized to sell, what was he authorized to sell? I mention this, not that I think it is conclusive in the case but only to show that the final deed cannot be reformed upon the theory that it departs from the preliminary contract; for I do not think there was such preliminary contract which the deed was bound to follow. The real question is does the deed convey what the grantor intended to convey, or does it by mistake convey only half of what it was intended and understood to convey? Upon this vital question the evidence of those present on the night of the day on which this preliminary talk between Nay and Kerns took place—the night when the deed was executed—gravely conflicts. Nay and his son say that when the word "eighth" was struck out, and it was intentionally struck out, they understood the deed to convey the one-sixteenth of the oil. This is not plausible, as the moiety of one-sixteenth could not be, to ever so plain a mind, a full sixteenth. It would import only a fraction of a sixteenth, even to one who could not fully comprehend the meaning of the word "moiety." Nay's son says that it was intended to strike out the word "moiety." That is not charged in the bill, the charge of the bill being simply that the word "eighth" was erased, and "sixteenth" put in its place, and that the parties did not know the legal effect of the deed thus altered, but thought it conveyed a sixteenth of all the oil; thus presenting the question of ignorance of law,—that is, ignorance of the legal effect of the deed. I do not discuss the question, so largely discussed in times gone by, of relief for mistake of law, or whether relief could be given in this case if such mistake as the bill asserts was actually existent. Witnesses for the defense pointedly deny this mistake. The two Duncans and Hays and the two Nays say that, when a question arose as to the meaning of the word "moiety," Kerns left it to his son-in-law Duncan to see whether the deed was right, Kerns being an unlettered, plain man of the great age of eighty years, utterly unable

to analyze or construe the deed; and the Duncans swear
that J. W. Duncan said to his father-in-law that the deed
was wrong as drawn, and that he ought not to sign it, and
that he would not advise him to sign it, unless it should be
changed from a moiety of the eighth to a moiety of the six-
teenth; and his father-in-law said: "Now, John, see that
it is changed. I have been took the advantage of so many
times that I want to be sure;" and that thereupon the no-
tary changed the deed, handed it to Duncan, and that he,
seeing that the change was just as he directed, then said
to the old man, "Grandpap, you can sign it now, if you
want to." This seems probable, as the sons-in-law
seemed to be averse to the old man selling away his
chance for large returns from oil on his land. But the
point I make just here is that the evidence gravely conflicts
upon the vital point whether the parties misunderstood
that deed when so changed. Nay and his son say they
did. Duncan and his son say they did not, but that the
change was made with set purpose to alter the effect of the
deed from the conveyance of a moiety of an eighth to a
moiety of a sixteenth. The old man had a right to make
that change. No binding contract forbade it. In this con-
flict the evidence of the old man, if intelligible or decisive,
would be of much import, because his purpose—his inten-
tion—is the vital question. His examination reveals that
his great age disables him from giving a clear narration of
the transaction. He does, however, plainly say that John
Duncan said: "Grandpap, I would not sign that deed. It
is not right. I would not sign it until it was fixed." And,
after it was fixed, that Duncan told him he could do as he
pleased, and that he thought the notary changed it, and
that he left it to John Duncan to say when the deed was
right. The evidence of the old man, while, in the whole,
not clear, clearly corrborate the oaths of the Duncans when
they say that the deed as drawn was unsatisfactory, and
that it was purposely changed so as to convey just one-half
of what it was drawn to convey. Now, here is conflict,
open, unavoidable conflict, upon the turning point in the
case,—a consideration which would forbid this Court, even
in ordinary cases, from reversing the circuit court; but
this is a peculiar case under the rules of law applicable to

it, and when we look at those rules they intensify the difficulty in the way of a reversal of a circuit court's decree. Let me advert to those rules. "A mistake in the execution of writing will not, in equity, be corrected, unless it appears that it does not contain the intention of the parties at the time it was made; and the proof of this, either parol, written, or both, must not be loose, equivocal, or contradictory, or in its texture open to reasonable doubt or opposing presumptions, for the writing itself is regarded as evidence so strong that only other unequivocal evidence irresistably conclusive is sufficient to reform it." *Jarrell* v. *Jarrell*, 27 W. Va. 743. Likewise, *Western Min. & Mfg. Co.* v. *Peytona Cannel Coal Co.*, 8 W. Va. 406, (Syl., point 7); *Pennebacker* v. *Laidley*, 33 W. Va. 624, (Syl., point 6); *Allen* v. *Yeater*, 17 W. Va. 128; *Maxwell Land Grant Case*, 121 U. S. 381, 7 Sup. Ct. 1015, 30 L. Ed. 949. I refer to *Southard* v. *Curley*, (N. Y. App.) 31 N. E. 330, 30 Am. St. Rep. 642, and note, 16 L. R. A. 561, as fully sustaining the doctrine here stated. "To justify the reformation of an instrument for mistake, it is necessary: First, that the mistake should be one of fact, not of law; second, that the mistake should be proved by clear and convincing evidence; third, that the mistake should be mutual and common to both parties to the instrument." *Purvines* v. *Harrison*, 1 Am. & Eng. Dec. Eq. 232; *Robinson* v. *Braiden*, 44 W. Va. 183, (28 S. E. 798).

Holding, as we do, that upon this conflict we cannot find that the mistake alleged existed, the case ends here logically; but I will add that another obstacle which the plaintiff must overcome is proof of notice on the part of Bartlett that he knew of the mistake alleged by the plaintiff to exist in the said deed. Here again the conflict of evidence is great. Such notice must be clearly proven. The circuit court has found the point against the plaintiff. Nay assented to the said change in the deed. If he was the purchaser, such assent would utterly preclude relief, unless it were proven that both he and Kerns thought the deed conveyed what it did not. Pom. Spec. Perf. Cont. § 241. If he bought for himself, it would preclude relief to him; if he bought as agent of Koen, it would bind Koen; or, at least it would not call for compulsion against Kerns, unless

we could find that the instrument did not do what he, too, intended to do. Merely because one's agent is mistaken, it does not follow that another, not likewise mistaken, can be compelled to do what he did not intend to do. In so far as the plaintiff relies upon a preliminary contract, and a departure of a deed from it, if there were such binding contract, there comes up the well-established rule of law that, whatever the departure of the deed finally executing the contract, it is presumed that the contract was changed by consent, and that the provisions of the deed were substituted purposely for the contract, and abrogate that contract, until it is clearly proven to the reverse. The law is that the deed reflects the final contract. It is not proven fully to the contrary in this case. *Railroad Co.* v. *Dunlop*, 86 Va. 346, 10 S. E. 239; Hil. Vend. 5; 1 Story Eq. Jur. § 160; *Bull* v. *Willard*, 9 Barb. 641; *Houghtaling* v. *Lewis*, 10 Johns. 298; *Jones* v. *Wood*, 16 Pa. St. 25; *Minor* v. *Edwards*, 12 Mo. 86; *Straley* v. *Perdue*, 33 W. Va. 375, (10 S. E. 780).

I omitted to say in its proper place that plaintiff claims that Bartlett had notice by record from the fact that in a certain other suit of Koen involving another interest in this oil land, to which Bartlett was a defendant, the bill alleged that Kerns had, by said deed, conveyed to him a sixteenth of the oil, and that this was notice to Bartlett that such was his right; but the answer to this is: First, that bill never hinted of any mistake in the deed, did not predicate Koen's ownership of a sixteenth on a mistake; and, second, while the bill did allege that Koen owned, under Kerns' conveyance, one-sixteenth, it averred that he derived it by the said deed, and said deed was exhibited with the bill; and that deed, when read, denied that statement of the bill, because it showed that it conveyed "the one undivided moiety of the one-sixteenth part of all the oil," etc. How could that be notice to anybody of a secret mistake in that deed? But, as I said above the case ends when we decide that the mistake is not proven with that distinctness required by law, but is involved in contradictory evidence, leaving the case, to say the least, in clouds of doubt, so that an appellate court cannot safely resolve that doubt by overturning the presumption that the circuit

court's decision is to be held correct until error clearly appear, especially in case of conflicting evidence.   Therefore we affirm the decree.

*Affirmed.*