## CHARLESTON.

W. C. COLBURN *v.* H. B. KEYSER *et al.*

Submitted May 13, 1924.    Decided May 20, 1924.

1. VENDOR AND PURCHASER—*Vendor in Land Contract Waiving Time of Payment of its Essence Cannot Rely on Delay.*

   Though a written contract for the sale of land makes payment on a day certain of its essence, yet the vendor may

waive this provision by orally agreeing that the time for payment may be extended, after which he can not rely upon the vendee's failure to tender payment within the period provided in the written contract. (p. 511).

2. SAME—*Written Land Contract May be Rescinded by Subsequent Parol Agreement; Burden of Proving Rescission of Land Contract by Positive and Conclusive Evidence on Person Asserting.*

A written contract for the sale of real estate may be rescinded by subsequent parol agreement, but such parol agreement to be effective must be executed, and to show that such agreement was actually effected, the burden is on the person attempting to establish the rescission to prove it by positive and conclusive evidence, generally, by proof that the contract was cancelled or destroyed, and if the purchaser has entered into possession, by a surrender thereof to the vendor. (p. 512).

Appeal from Circuit Court, Raleigh County.

Action by W. C. Colburn against H. B. Keyser and others. From a decree for defendants, plaintiff appeals.

*Reversed and remanded.*

*Ashton File* and *W. W. Goldsmith,* for appellant.
*McGinnis, Maxwell & McGinnis,* for appellee Keyser.

MEREDITH, PRESIDENT:

Plaintiff, as purchaser of a parcel of real estate under a written contract, brings this suit to compel defendants, the sellers, to execute and deliver to plaintiff a deed for said real estate, pursuant to the terms and provisions of the contract of sale. The circuit court overruled a demurrer to plaintiff's bill, but upon said bill as well as upon defendant's answer thereto, plaintiff's special reply and replication, and the evidence taken, it decreed that plaintiff's bill be dismissed, and, as affirmative relief for defendants, it ordered that the contract of sale be set aside, cancelled and annulled. Plaintiff appeals.

Many of the circumstances giving rise to the controversy are conceded either in the pleadings or in the proof. It is admitted that on September 20, 1922, plaintiff and defendant, H. B. Keyser, entered into the following contract:

"This contract, Made and entered into this 20th day of September, 1922, by and between H. B. Keyser, party of the first part, and W. G. Colburn, party of the second part;

Witnesseth: That for and in consideration of the sum of Ten Dollars, cash in hand paid, the party of the first part hereby agrees to sell and convey unto the party of the second part, by apt and proper deed of conveyance, his wife uniting therein, at the time hereinafter mentioned, and the party of the second part hereby agrees to purchase of and from the party of the first part, for the consideration hereinafter mentioned, that certain lot or parcel of land, together with the buildings thereon, owned by the party of the first part, situated on North Kanawha Street, in the City of Beckley, West Virginia, on the north side of said street, and adjoining the land owned by C. T. Ross on the west, except an alley lying between said property and the land of the said Ross.

The party of the second part agrees to pay unto the party of the first part, within sixty days from this day the sum of six thousand dollars, as the purchase price for the property hereinbefore described, upon the payment of which said sum, within said period of time, the party of the first part will make, execute and deliver a deed conveying said property to the party of the second part, with general warranty of title, and free of all encumbrances.''

It is further shown that plaintiff did not pay or tender the $6000 called for in the foregoing contract within 60 days from its date, although he took possession September 25, 1922, but that on November 22, 1922, pursuant to an oral understanding, plaintiff executed and delivered to H. B. Keyser his note for $6000, payable in 60 days, paying the interest thereon in advance. Plaintiff's construction of this transaction, as disclosed by his bill, is that the note was in lieu of the cash payment called for in the original contract, and from his testimony it is plain that he considers that he had 60 days from the date of the note, or until January 21, 1923 to tender the money and demand the deed. In his answer Keyser denies this construction, and, relying upon the statute of frauds, he claims that the 60 days provided in the written contract having elapsed, he agreed orally on November 22, 1922, to sell the property to the plaintiff upon the condition that the plaintiff pay the $6000 to defendant

within 60 days from the expiration of the 60 day period provided for in the original written contract, or January 18, 1923. This position would seem to have as its foundation the abandonment of the written contract and the substitution of a new oral one; but in his testimony Keyser expressly admits that he merely extended the original contract for 60 days.

On January 18, 1923, plaintiff and Keyser had a conference, and entered into an oral understanding, as to the purport of which the parties entertain divergent views. Keyser alleges in his answer and urges in his testimony that plaintiff admitted that he was unable to pay his $6000 note, but being desirous of retaining possession of the premises, he consented to remain and hold the same as a tenant, agreeing to pay as rental the sum of $50.00 per month. He was to receive credits on his rent account for the interest he had advanced on his note, $60.00, also the $10.00 consideration for the original contract, and $24.00 which he had expended for repairs, and defendant says he agreed to pay the rent which had accrued, subject to the above credits, on the following Saturday, January 20th. This arrangement Keyser characterizes as a settlement or rescission of the purchase agreement, thus his prayer in his answer that the written contract of September 20, 1922, be cancelled and held for naught. By way of replication to Keyser's answer, plaintiff denied defendant's allegations that plaintiff on January 18th admitted his inability to meet his note; denied that their agreement of that day effected a settlement and abrogation of their contract for the sale of the real estate; and denied that he agreed to rent said property from Keyser or that he is now or was at the time of the institution of this suit, in possession of said property under a rental contract. His explanation of the transaction of January 18th, as shown by his evidence, is that he told Keyser that he was not sure that he could meet the note at its maturity, January 21st, and that the agreement as to his holding the premises as a tenant was expressly contingent upon whether he could meet the note. As a matter of fact, he states that he could not have met the note on the 18th, but on Saturday, the 20th, he had secured the necessary money, and the evidence amply shows that on that day he offered Keyser the $6000.00,

and that Keyser refused to accept it. The due date of the note fell on Sunday, and on Monday, the 22nd, plaintiff, through his attorney, again tendered the money and it was again refused. A circumstance probably not entirely favorable to plaintiff's theory of the case is that he first offered but $5400.00, which offer was of course refused. The fact is, that, relying, as he contends, upon the rescission of the contract of sale, Keyser sold the property to Maxwell & Keyser, a partnership of which he was a member, on Friday, January 19th. He received a check from the partnership for $1545.90, dated January 20, 1923, and some sixty days later, Maxwell & Keyser assumed (in what manner is not shown) obligations of Keyser to the amount of $4500.00. It has not yet received a deed for the property. Keyser explains his haste in disposing of the premises by stating that he was being pressed by the holders of notes for the payment of which he was responsible. He admits that he does not remember advising plaintiff of this circumstance, although he insists that he made it clear that he desired payment of the note when due. Having, as he says, rescinded their agreement on January 18th, Keyser nevertheless admits to having told plaintiff that the latter could still purchase the property if he could raise the money and before it was otherwise disposed of. Neither copy of the written contract was destroyed or surrendered by either party, nor was plaintiff's note surrendered or cancelled.

With these facts and the theories of the parties in mind, we must decide whether plaintiff is entitled to a conveyance of the real estate in question. The first important issue raised by defendant is that in the written contract of September 20th, time was of the essence of the agreement, and that as plaintiff did not perform or offer to perform his part of the agreement within the time specified therein, the contract died and under the statute of frauds could not be revived by any oral understanding. Plaintiff debates this proposition, however, and we think effectively demonstrates the fallacy of Keyser's argument with respect thereto so far as this case is concerned. This answering argument, is that, assuming that as the original contract was written, plaintiff was bound to pay or offer to pay the purchase price within the 60 days, nevertheless by agreeing to extend the time for the execution

of the contract and accepting the note of November 22nd,
Keyser effectively waived his right to rely upon the strict
language of the contract as to the time of plaintiff's perform-
ance.   There seems to be no doubt of the correctness of the
proposition that the time element may be waived by acts in
pais, even where time is of the essence of the contract, the only
question which would be raised is as to whether the principle
is properly applicable to the facts presented here.   We find
the rule laid down in Black, Rescission and Cancellation, Vol.
1, sec. 219, as follows:

> "Even where time is made the essence of the contract,
> this provision may be waived by the party for whose
> benefit or protection it is inserted, either expressly or
> by extending the time for payment or performance or
> by granting indulgence to the other party in this re-
> gard; and when such a waiver has been made, he can
> not arbitrarily and summarily declare a forfeiture of
> the contract for delay, but must first demand payment
> or performance and give the other party a reasonable
> time and opportunity, after such demand, to comply."

Though perhaps not the chief ground of decision, the
principle quoted was certainly the view of this court in the
case of *Gas Company* v. *Elder,* 54 W. Va. 335, 46 S. E. 357,
wherein it appeared that the seller waited many months after
the date fixed for payment, and yet the court said:

> "Though a contract for sale of land makes payment
> on a day of its essence, yet the vendor may waive com-
> pliance with it, or after failure to pay on the day con-
> tinued recognition by him of the contract as still binding
> is a waiver of strict compliance."

There are other authorities illustrative of the principle
stated, for example, *Collins* v. *Thomas,* 87 W. Va. 597, 105
S. E. 897, and 2 Lomax, Digest, 72, but further elaboration
of the doctrine would be of little added value.   It should be
particularly noticed that Keyser specifically admits that he
extended the contract when he took plaintiff's note.   Having
done so, it would be, in our view, futile to contend that he
did not waive that provision of the written contract requiring
plaintiff to pay within 60 days from September 20, 1922. But,
he says he only extended it 60 days from the expiration of

the original 60 day period, that is, until January 18, 1923. In the face of his acceptance of the note maturing January 21, 1923, that argument is absolutely without bottom. He contends also and pleads in his answer that the statute of frauds bars an oral agreement for extension, arguing that the extension creates a new contract. No new contract was created. The extension "but constitutes only a modification in that one regard of the original contract, so that, in all other respects, including rights of rescission for causes other than delay in performance, the rights of the parties continue to be governed by their original agreement." · 1 Black, R. & C. §§ 219, 415. The contract did not expire 60 days after September 20, 1922. By agreement it was kept in full force and effect binding on both parties as to its material parts. and complied with every requisite of the statute of frauds.

But Keyser insists upon one other proposition, and that is. that although we may decide that the contract was extended by mutual agreement, nevertheless, it was also rescinded by mutual agreement on January 18th, and that such rescission left him free as to any disposal he might choose to make of the property. However, we can not accede to this proposition either. In the first place, the oral evidence as to whether or not plaintiff and Keyser agreed to cancel and rescind their contract is absolutely conflicting. We have already discussed their interpretations of their agreement of January 18th, and we need not repeat them in detail. Plaintiff asserts the contract was left standing, that he might pay the note on its due date. Keyser, with equal vigor, says that plaintiff abandoned his purpose of purchasing the property, and agreed to hold as a tenant. Their views being so different, we must look to the other circumstances, and in this we find that plaintiff has all the better of the argument. The written contract was neither destroyed nor surrendered; plaintiff's note was left in Keyser's possession, a subsisting obligation against plaintiff; and as a climax, plaintiff, two days later, tendered the money in payment for the deed which he demanded. True, he first offered but $5400, which might indicate that he considered the bargain as open to new negotiations, but that is an inference highly speculative and not sufficient to outweigh the other considerations, as to which

our law is very firmly established, as witness the cases of
*Ballard* v. *Ballard*, 25 W. Va. 470, and *Cunningham* v. *Cun-
ningham*, 46 W. Va. 1, 32 S. E. 998, as well as other authorities.
In the first of the cases just cited, a father by written contract
agreed to convey real estate to his son, and the son took
possession, but after making said agreement, the father con-
veyed part of the land to another son, and at death devised
the residue to others of his family. Eight months after the
sale the vendee gave up possession, and there was conflicting
evidence as to declarations on his part that he was abandoning
the farm. He, of course, flatly disclaimed such declarations,
though he delayed making provision for the payment of the
purchase money until his father's death. Referring to the
prior case of *Phelps* v. *Seely*, 22 Grat. (Va.) 573, the court
there said:

> "The enquiry before us then is reduced to the simple
> question, whether under all the circumstances the said
> contract was, by subsequent parol agreement and the
> conduct of the parties, rescinded and abandoned? This
> is a question of fact rather than of law; for it can not
> be doubted that a written contract for the sale of land
> may be rescinded by a subsequent parol agreement; but
> to make such agreement effectual it must have been
> executed by the parties and be established by 'clear and
> conclusive proof'."

It then pointed out that the written contract had never
been destroyed and that the burden of establishing the re-
scission is upon those asserting it, and held in the syllabus
as follows:

> "A written contract for the sale of land may be
> rescinded by a subsequent parol agreement by the par-
> ties, but to make such agreement effectual it must have
> been clearly executed and be established by clear and
> conclusive proof."

We will not detail the facts of the Cunningham case. The
contract there was an oral one, and the issue was whether
the grantee held possession of the land under the contract or
as a tenant. In holding that he held under the contract of
purchase and was entitled to a decree for specific perform-
ance, the court used the following language:

"There is no doubt but that an executory contract for the sale of the land, whether written or oral, can be rescinded or waived, in equity by word of mouth, if possession be given up, or the writing be destroyed, but not without something done by way of execution of the rescission or waiver. *Beggs* v. *Bodkin,* 32 W. Va. 566, 9 S. E. 891; *Straley* v. *Perdue,* 33 W. Va. 375, 10 S. E. 780; Fry, Spec. Perf. §691; Wat. Spec. Perf. Cont. §386. But such verbal rescission or waiver, because it is merely verbal, must be clear, positive and above suspicion, and it must be proven not by mere loose conversation. 'The court requires as clear evidence of the waiver as of the existence of the contract itself. Abandonment of a contract, according to the law of this court, is a contract in itself.' And, accordingly, 'loose conversation, which was alleged as a waiver of a contract for a lease, was held not to amount to a new contract.' Fry Spec. Perf. §698; *Falls.* v. *Carpenter,* 28 Am. Dec. 593."

Authorities might be multiplied if they were necessary, but they are not. It is clear to us that defendants have not successfully carried the burden of proving the rescission contended for by them.

Our conclusion is that the contract was extended by mutual agreement, and was in full vigor and binding on Keyser when plaintiff tendered the purchase price on January 20, 1923. He has made further tenders in his bill and before the bar of this court, and his prayer for specific performance should not be refused. We therefore reverse the decree of the circuit court and remand the cause, giving plaintiff a right to a specific execution of the contract upon his payment into court of the sum of $6000.00 with interest from January 21, 1923.

*Reversed and remanded.*